## JAMES HALES, Respondent, v. ONEY C. RAINES, Appellant.

### St. Louis Court of Appeals, December 5, 1911.

1. **PHYSICIANS AND SURGEONS: Malpractice: X-Ray Burn: Pleading: Petition Construed.** In an action to recover damages against a surgeon for an X-ray burn, the petition alleged that defendant, in treating plaintiff's hand, negligently and unskillfully applied X-rays to said hand and negligently and unskillfully caused it to be exposed to said rays eight or nine times and for such lengths of time as to cause it to be burned, and that by reason of such negligence and unskillfullness said hand became swollen, poisoned and diseased. *Held*, that the petition did not limit the allegations of negligence, either to the use of the rays at all or to the number or length of the exposures, but alleged negligence generally in the unskillful application of the rays to plaintiff's hand and in unskillfully causing it to be exposed to such rays eight or nine times and for such lengths of time as to cause injury; and hence plaintiff was entitled to recover thereunder on proof of defendant's negligence in directing him to hold his hand too close to the X-ray machine, eight or nine times, thereby causing it to be burned, notwithstanding the evidence was uncontradicted that the kind of treatment and the number and length of time of the applications were proper.

2. ———: ———: ———: **Sufficiency of Evidence.** In an action to recover damages against a surgeon for an X-ray burn on the hand, where the petition contained a general allegation of negligence with respect to the manner of treatment, *held*, that the evidence was sufficient to warrant the submission to the jury of the question of whether defendant was negligent in placing plaintiff's hand too close to the X-ray machine.

3. ———: ———: ———: **Instructions: Generality.** In an action against a surgeon for malpractice in administering X-ray treatment, the petition contained a general allegation of negligence with respect to the manner of treatment, and the proof showed that the kind of treatment and the extent of application were proper except that defendant was negligent in exposing plaintiff's hand too close to the machine. The court charged that one holding himself out as a physician is bound to use reasonable skill in the treatment of those who employ him, and if defendant undertook to treat plaintiff's hand and in doing so negligently applied the X-rays, exposing the hand to such

currents eight or nine times for such periods of time as to cause the skin, muscles and contents of the palm to be severely burned, and by such negligence plaintiff's hand was permanently injured, then the jury should find for plaintiff. *Held*, that the instruction was objectionable as misleading, in failing to require that the jury, in order to find for plaintiff, must find the specific act of negligence shown by the proof, to-wit, the placing of the hand too close to the tube of the machine.

4. **NEGLIGENCE: Instructions: Must Submit Specific Acts.** Although the petition in a negligence case contains only general allegations of negligence, the instructions submitting the question of liability should be so formulated as to require the finding of the particular act or acts of negligence revealed by the evidence.

5. **Action: Cause of Action.** The term "Cause of Action" signifies plaintiff's primary right and defendant's wrongful violation thereof.

6. **MALICIOUS PROSECUTION: Termination of Action Maliciously Prosecuted: Partial Termination: Action on Counts Dismissed.** Where one has been prosecuted on an indictment containing several counts or in a civil action on a petition containing several counts which declare upon separate and distinct causes of action, he may maintain an action for malicious prosecution on such counts as to which he has been discharged, although the case is being prosecuted against him on the other counts.

7. ———: ———: **Necessity of Showing Termination: Nonsuit.** In an action for malicious prosecution, it is essential to show that the prior prosecution or suit has been ended and that the defendant (plaintiff in the suit for malicious prosecution) has been finally discharged therefrom; but where a suit or prosecution is dismissed with the intention of bringing it again, on the same cause of action, and it is subsequently brought again, the dismissal amounts to no more than a suspension of the action and is not an ending thereof in the legal sense essential to support an action for malicious prosecution.

8. ———: ———: ———: ———: **Facts Stated.** Plaintiff brought suit against defendant, a surgeon, for injuries sustained by an X-ray burn, and took an involuntary nonsuit, which he did not move to set aside. He subsequently brought suit for the same injury, but his petition alleged only a portion of the grounds of negligence set out in the petition in the former action. Those specifications of negligence which were counted on in the first, but omitted in the second, suit were made the basis by defendant for a counterclaim for malicious prosecu-

Hales v. Raines.

tion. *Held*, that the second action, in contemplation of law, was a continuation of the former, which could not be said to have ended in the legal sense essential to support an action for malicious prosecution; the omission in the second suit of specifications of negligence contained in the former suit being immaterial.

9. PHYSICIANS AND SURGEONS: Malpractice: Pleading: Petition Construed: Contract or Tort. In an action to recover damages against a surgeon for an X-ray burn, a petition alleging that plaintiff employed defendant for a reasonable compensation to treat his hand and that defendant so negligently performed the treatment that plaintiff's hand was burned and injured states a cause of action in tort and not one *ex contractu;* the allegation as to the contract of employment being mere inducement.

10. TRIAL PRACTICE: Negligence: Assumed Risk: Issues: Evidence. Where, in a negligence case, the plaintiff introduces in the case the question of assumed risk, by evidence he offers in chief, it is proper to consider the defense of assumed risk, although it is not pleaded in the answer; so that where, in an action against a surgeon for an X-ray burn, defendant did not plead assumption of the risk in his answer, but plaintiff introduced, as part of his case in chief, defendant's abandoned answer, which, among other things, alleged that, before applying the rays to plaintiff's hand, defendant informed plaintiff that the treatment was new and imperfectly understood and there was always peril to the patient which it was impossible for the physician to anticipate, to which plaintiff replied that he would assume all known and unknown risks incident to the use of the rays, and plaintiff then introduced evidence which tended to contradict the recitals in said answer, the question of assumed risk was thereby injected into the case, and hence it was error to refuse to allow defendant to introduce evidence tending to prove that plaintiff had assumed the risk.

11. APPELLATE PRACTICE: Theory Below: Binding Effect. Parties are bound by the position they assume at the trial.

12. PHYSICIANS AND SURGEONS: Malpractice: Assumed Risk: Negligence. Where a surgeon, proposing to treat a patient's hand with X-rays, informed him that there was always danger connected with the treatment, and the patient agreed to assume the risk, such assumption was limited to risks attending the use of the X-rays in a careful and skillful manner; it being contrary to public policy to permit the doctrine of assumed risk to include an injury caused by the surgeon's negligence in exposing the patient's hand so close to the tube of the X-ray machine that it was seriously burned.

Appeal from St. Louis City Circuit Court.—*Hon. Matt. G. Reynolds,* Judge.

REVERSED AND REMANDED.

*Richard F. Ralph, P. H. Cullen, Thomas T. Fauntleroy* and *Shepard Barclay* for appellant.

(1) The trial court erred in excluding the counterclaim, because an action lies for malicious prosecution of a civil action. Cooper v. Scyoc, 104 Mo. App. 414; Brady v. Erwin, 48 Mo. 533. (2) The counterclaim states a perfect cause of action for malicious prosecution of the civil action mentioned. The fact that part only of the original charges (in the first action) are the basis of the counterclaim is no bar to recovery for malicious prosecution of those charges which were groundless and otherwise actionable. Boogher v. Life Assn., 75 Mo. 319; Reed v. Taylor, 4 Taunt. 616. (3) The instruction excluding the counterclaim was erroneous under the decisions holding that where the court, at close of plaintiff's case (or state's case in a criminal prosecution), declares the law to be that plaintiff cannot recover, and thereupon plaintiff dismisses or takes a nonsuit, a prima facie case of want of probable cause and of malice is thereby made out. McGarry v. Railroad, 36 Mo. App. 347; Sharpe v. Johnston, 59 Mo. 577; Hurgren v. Ins. Co., 141 Cal. 585; Sappington v. Watson, 50 Mo. 83; Fugate v. Miller, 109 Mo. 289. Evidence tending to prove want of probable cause also warrants an inference of malice. Callahan v. Cafferata, 39 Mo. 136; Stubbs v. Mulholland, 168 Mo. 74; McGarry v. Railroad, 36 Mo. App. 346. But the exclusion of the instruction at the close of the plaintiff's evidence at the first trial was fatal error. Stone v. Powell, 5 Mo. 436. (4) The court erred in excluding the testimony that plaintiff's

162 App.—4

contract was with the association. If an action for malpractice is founded on contract (as here) it must be so proved as alleged. Lane v. Boicourt, 128 Ind. 420; Dashiell v. Griffith, 84 Md. 363. (5) Where a contract is alleged, plaintiff must prove same and cannot recover on another theory. Eyerman v. Assn., 61 Mo. 489; Mooney v. Kennett, 19 Mo. 551; Green v. Cole, 127 Mo. 587; Clements v. Yeates, 69 Mo. 625; Laclede Co. v. Tudor Works, 169 Mo. 137. (6) The court erred in not instructing for a verdict for defendant. The alleged negligence was shown to be no negligence by plaintiff's own witness. Where the evidence does not show negligence, it is the duty of the court so to declare. Carroll v. Railroad, 107 Mo. 653. (7) The weight of testimony in favor of defendant is so conclusive and overwhelming as to indicate passion or prejudice in the verdict for plaintiff and to warrant the closest scrutiny of all the proceedings. Whitsell v. Ransom, 79 Mo. 258; Garrett v. Greenwell, 92 Mo. 120. (8) The two instructions both of which authorized verdicts "for plaintiff in a sum not to exceed $10,000," without stating elements of damage, are erroneous, as giving a "roving commission" to the jury without any guide as to the recoverable claims for damage in the petition. Hawes v. Stockyards Co., 103 Mo. 60; Badgley v. City, 149 Mo. 134. (9) The instruction on particulars of damages is erroneous from the words "and such damages" to its close, for it authorizes recovery for other damages than those alleged, which is unsound in principle. Only one element (permanent impairment of the hand) alleged was within the sweeping language of this instruction, and it should have been so limited. Wallack v. Transit Co., 123 Mo. App. 160; Baquin v. Railroad, 90 Mo. App. 118. The instruction for plaintiff authorizes recovery for certain items of the "injuries for which he sues", but omits to limit compensation to those ascribed to defendant. This was error in view of the evidence

as to the intervention of later treatment before plaintiff's hand became stiff, which was nearly a year after defendant ceased his attentions. The instruction should have confined the recovery to such injuries as resulted directly or proximately from the acts of defendant. That omission is material error. Neff v. City, 213 Mo. 365; Carpenter v. McDavitt, 53 Mo. App. 403. (10) The trial court erred in allowing Dr. Harris to testify for plaintiff that his treatment of plaintiff (of ten or eleven months after defendant) to the time when plaintiff's hand became stiff was "proper treatment," instead of stating what he did; for the issue, whether or not the X-ray treatment or the after-treatment was the cause of the last condition of plaintiff's hand, was a material issue; and hence the above evidence of Dr. Harris was not admissible in the form it was given. (11) The consent of a patient to a course of treatment of experimental character, as the evidence offered by defendant and excluded by the court tended to prove would narrow and restrict the duty and liability of the physician to the patient, far within the limits of liability indicated by the Court's instructions in this case. Gramm v. Boener, 56 Ind. 497. (12) After admitting all of plaintiff's evidence concerning the conversations and other facts to show the terms and circumstances of defendant's employment to treat plaintiff's hand by the X-rays, the trial court erred in excluding the testimony by defendant and his witnesses to show their version of the same matters. (3) Plaintiff having (without any limitation or reservation) offered as part of his case an abandoned asnwer of defendant, the recitals of fact in that answer are to be treated as other evidence of the same facts, including its statements in regard to the agreement between plaintiff and defendant touching the X-rays treatment and those facts could not properly be pushed out of the case by the court' or by the plaintiff *ex post facto.* Plaintiff was bound by the position taken by the afore-

said offer.  Norton v. Ittner, 56 Mo. 353; Stalzer v. Dold
Co., 84 Mo. App. 574; Paving Co. v. O'Brien, 128 Mo.
App. 284; Northrop v. Diggs, 128 Mo. App. 217.

*Joseph F. Coyle, Charles E. Morrow* and *Robert
Kelley* for respondent.

(1)  This is an action for malpractice.  The peti-
tion contains every allegation necessary to state a
cause of action founded on this tort.   Wheeler v.
Bowles, 163 Mo. 398, 30 Cyc. 1583, 16 Enc. Pleading
and Practice, 528.  (2)  The employment of defendant
by plaintiff to treat his hand is pleaded as matter of
inducement for the purpose of showing that the rela-
tion of physician and patient existed between plaintiff
and defendant at the time defendant treated plaintiff's
hand with the X-rays.  When this relation is alleged
and proven to exist, the law imposes the duty upon the
physician ''to use and exercise such care as would
ordinarily be used and exercised by a physician or
surgeon of average skill and knowledge in the City of
St. Louis,'' and it is not necessary that the petition
contain this allegation.  Armelio v. Whitman, 127 Mo.
App. 698; 30 Cyc. 1583; Bliss on Code Pleading (3
Ed.), sec. 150, p. 252.  (3)  Defendant now contends
that proof of the involuntary nonsuit in the case before
Judge Foster makes out a prima facie case of want of
probable cause in the action for malicious prosecution
set up in his counterclaim contained in his answer in
this case.  We submit that this is not the law in Mis-
souri.  Smith v. Burrus, 106 Mo. 94.  (4)  There was
only one course open to the trial court in the face of
the overwhelming volume of competent evidence in-
troduced in this case as shown by the record, and that
was to submit the case to the jury.  Every allegation
of the petition is supported by substantial evidence.
Meily v. Railroad, 215 Mo. 586; Crossett v. Ferrill, 209
Mo. 707; Barth v. Railroad, 142 Mo. 548; Pitthan v.

Schaithman, 127 Mo. App. 33; McManus v. Railway, 118 Mo. App. 161; Knapp v. Hanley, 108 Mo. App. 360. (5) Defendant's objection to the instructions on the measure of damages has been completely put at rest by the following decisions of the Supreme Court of Missouri: Wheeler v. Bowles, 163 Mo. 409; Browning v. Railroad, 124 Mo. 71; Fearey v. O'Neill, 149 Mo. 477; Harmon v. Donohue, 153 Mo. 274; Smith v. Fordyce, 190 Mo. 130; Partello v. Railroad, 217 Mo. 657.

NORTONI, J.—This is a suit for damages accrued to plaintiff on account of malpractice by defendant. Plaintiff recovered in the amount of $5,583.33, and from this judgment defendant prosecutes the appeal.

Plaintiff is a machinist by trade, while defendent is a physician and surgeon engaged in practicing his profession in the city of St. Louis. The evidence tends to prove that while working at his trade plaintiff received a slight scratch in the palm of his right hand. which, though it did not impair the usefulness of the hand, nevertheless refused to yield to home treatment. In a short time the injury developed a red spot in the palm of the hand about the size of a half dollar. Though such result appeared, it is said that it neither occasioned pain nor inconvenienced plaintiff in the performance of his work as a machinist. As the condition seemed obstinate and continued notwithstanding the treatment applied, plaintiff consulted defendant thereabout on August 10, 1901. Defendant diagnosed the case and informed plaintiff that he was suffering from a chronic disease known as dry tetter or eczema and that he could cure it in a reasonable time; whereupon plaintiff says he employed defendant to treat his hand for the ailment, and that he commenced the treatment by applying a salve to the spot in the hand but which afforded no relief. Defendant continued treating plaintiff for more than a year by the application of different remedies without

satisfactory results therefrom, until September 27, 1902, when he commenced the use of the X-rays thereon. The grievance complained of here relates alone to the manner of the X-ray treatment, for it is said that defendant so negligently and carelessly applied the same as to burn and distort plaintiff's right hand so as to permanently injure him. For plaintiff, the evidence tends to prove that defendant applied the X-ray to his hand nine times within eleven days for different periods, from fifteen to thirty-five minutes each, and during each treatment required plaintiff to hold his hand within one-half inch of the tube of the machine which emitted the electrical current. As a result of this, the inner tissues of plaintiff's hand were so burned as to occasion its permanent injury. It appears that plaintiff suffered excruciating pains for several months as a result of this treatment and that the ligaments and muscles of the hand are so withered and distorted as to render it, according to the language of some of the witnesses, a "claw hand." The proof is overwhelming that, though the application of the X-ray was a proper treatment for eczema at the time, the apparatus should have been adjusted at a distance from six to twelve inches from the affected part to which the treatment was applied. In other words, no physician, in the exercise of ordinary prudence and care, would apply the X-ray with the tube of the instrument within one-half inch of the parts under treatment.

If plaintiff's evidence is true, as the jury found it to be, the record is replete with testimony tending to prove that defendant was negligent in respect of the manner in which he applied the X-ray on nine different occasions within eleven days. But it is argued there is no evidence of the particular negligence alleged in the petition and the court should therefore have directed a verdict for defendant. Under this head, too, it is argued the court by instructions

submitted to the jury, as negligence on the part of defendant, that which the evidence conclusively reveals to be a proper course of treatment in the circumstances of the case. Both of these arguments assume as a predicate and proceed upon the theory that the petition alleged specific acts of negligence on the part of defendant. It is argued that though the petition contains an averment of negligence in general terms in the first instance, it limits the same by a subsequent averment that the X-ray was applied to plaintiff's hand eight or nine times for such length of time as to occasion the injury. We do not so understand the petition. As we interpret it, the allegation of negligence is a general one, for both the first and subsequent clause thereof are connected by the conjunctive "and." The averment is, "That in treating plaintiff for said disease or ailment, defendant negligently, carelessly and unskillfully applied certain electric rays or currents commonly known as Roentgen rays or X-rays to the palm of plaintiff's said right hand *and* negligently, carelessly and unskillfully caused the palm of plaintiff's right hand to be exposed to said rays of currents eight or nine times and for such lengths of time as to cause the skin, muscles, etc., of plaintiff's hand to be burned, etc." This averment is followed by one to the effect, "That by reason of the negligence, carelessness and unskillfulness aforesaid, on the part of defendant, plaintiff's said right hand became badly swollen, poisoned, diseased, etc." It is said that the allegation of negligence above set forth avers, as breaches of duty on the part of defendant, three separate matters only, to-wit: First, the use of the X-ray at all; second, the exposure thereto of plaintiff's hand eight or nine times; and, third, such length of exposure as to cause the hand to be severely burned, etc. As before said, we do not so interpret the petition. Upon a reasonable construction, it does not appear that plaintiff complains alone of the use

of the X-ray, or that he complains of its application
to his hand eight or nine times when such application
is disassociated from the other matters therein re-
ferred to, or that he complains alone, as a separate
specification of negligence, of the length of time the
X-ray was applied to his hand.    Throughout this alle-
gation, the conjunctive "and" is employed and the
charge is, that defendant unskillfully applied the X-
ray to plaintiff's hand and unskillfully caused it to
be exposed to said ray eight or nine times for such
length of time as to cause the injury.  It seems clear
enough that plaintiff charges defendant with unskill-
fully applying the X-ray on eight or nine separate
times and for such period of time on each occasion as
to inflict an injury.  It is true all of the proof goes
to the effect that the use of the X-ray was a proper
one for eczema and that its application for from ten
to thirty-five minutes was proper enough and that
nine of such applications within eleven days were
proper, too.  But be this as it may, all of the evidence
goes to the effect, as well, that if such applications
were made while plaintiff's hand was exposed within
one-half inch of the tube, then such applications were
negligent and careless; for the tendency was to burn
and destroy the tissues of the hand.  Such an appli-
cation of the X-ray, according to the proof, is a care-
less and unskillful one as alleged in the petition, and
it goes without saying that eight or nine different ap-
plications in the same manner for such a length of
time as to unduly burn the tissues of the hand was
carelessness, too.  The court did not err in refusing to
direct a verdict for defendant on the theory that the
case made disproved the averment of negligence relied
upon.

For plaintiff the court gave the following in-
struction:

"The court instructs the jury that one who holds
himself out to the public as a physician and surgeon,

the law implies a promise and duty on his part that he will use reasonable skill and diligence in the treatment of those who may employ him; therefore, if you find and believe from the evidence that defendant undertook to treat plaintiff's right hand for a disease or ailment commonly known or called eczema, and that in treating plaintiff for said disease or ailment, defendant negligently and carelessly applied certain electric rays or currents, commonly known as Roentgen or X-rays, to the palm of plaintiff's said right hand and exposed said hand to said rays or currents eight or nine times for such lengths of time as to cause the skin, muscles and contents of the palm of plaintiff's said right hand to be severely burned and by reason of such negligence plaintiff's said right hand has become permanently injured, lamed and disfigured, then you will find for the plaintiff in a sum not to exceed ten thousand dollars.'' It is argued this is an erroneous instruction for the reason that it authorizes the jury to find a negligent breach of duty on the part of defendant in using the X-ray at all and because such X-rays were used eight or nine times for a considerable length of time on each occasion, when all the proof shows it was proper to use the X-ray and that it was proper to use it eight or nine times as was done and that it was proper, too, to apply it for the length of time which the evidence suggested. The instruction is misleading. It should have been more definite and certain. It should have required the jury to find the particular act of negligence which the evidence revealed, and that is, in this case, the manner of the application of the X-ray by exposing plaintiff's hand to it eight or nine different times within one-half inch of the tube and for a considerable length of time on each occasion. But the evidence goes to show the application was not negligent if the hand was exposed at from six to twelve inches from the tube; therefore the instruction should have required

the jury to answer pointedly as to whether or not defendant required plaintiff to expose his hand within one-half inch of the tube as plaintiff testified, or within six to twelve inches thereof as defendant testified, for such was the issuable fact in the case. Especially is this true in view of the general allegation of negligence contained in the petition, for the rule is, in such cases, that the instruction should be so formulated under such general allegation as to require the jury to find the particular act or acts of negligence revealed in the proof. [See Allen v. St. Louis Transit Co., 183 Mo. 411, 435, 81 S. W. 1142; Mulderig v. Railroad, 116 Mo. App. 655, 94 S. W. 801; Sommers v. St. Louis Transit Co., 108 Mo. App. 319, 83 S. W. 268; Miller v. United Rys. Co., 155 Mo. App. 528, 134 S. W. 1045.]

It appears plaintiff instituted a prior suit against defendant on the same cause of action here asserted, and that he suffered an involuntary nonsuit therein under an instruction by the court to the effect that he was not entitled to recover. In such prior suit on the same cause of action—that is, for the injury to his hand—plaintiff's petition recited additional specifications of negligence to that now relied upon, all of which were contained in one and the same count. Besides averring an unskillful application of the X-rays to his hand at eight or nine different times and for a considerable length of time each, he averred, too, in such former suit that defendant was otherwise negligent with respect to the treatment. Such additional specifications of negligence go to the effect that after plaintiff's hand became swollen and diseased by the burn received from the machine, defendant carelessly and unskillfully bound a cloth saturated with a strong solution of salt water on the palm of his hand, thereby causing his hand to mortify and decay, and that defendant negligently and carelessly scraped the mortified and decayed flesh from the palm of his hand and

rebound it with a cloth, etc. As these additional spec-
ifications of negligent treatment are not contained in
the present petition, defendant set them up in one
count of his answer as the basis of a counterclaim
for malicious prosecution. The petition, answer, re-
ply and judgment in the former suit were introduced
in evidence here and, as above said, it appears from
them that the cause of action involved there was the
identical cause of action involved here, for, as we un-
derstand it, the words ''cause of action'' signify plain-
tiff's primary right and defendant's wrongful viola-
tion of that right. [See Pomeroy's Code of Procedure
(4 Ed.), sec. 346, *et seq.*; Rice v. C. B. & Q. R. Co.,
153 Mo. App. 35, 53, 131 S. W. 374; Litton v. C., B.
& Q. R. Co., 111 Mo. App. 140, 149, 85 S. W. 978;
Mellor v. Mo. Pac. R. Co., 105 Mo. 455, 470, 16 S. W.
849.] The identical injury for which a recovery was
had in this case was relied upon, therefore, in the
prior suit between the same parties, for all of the
several specifications of negligence contained in the
petition in the prior suit related to the same course
of treatment as a result of which plaintiff received his
injuries. At the conclusion of all of the evidence, the
court peremptorily instructed a verdict for plaintiff
on defendant's counterclaim, which charged that plain-
tiff without probable cause and with malice prosecuted
a former suit arising on the same subject-matter
against defendant on the specifications of negligence
above stated, which were omitted from the present
petition. Such counterclaim averred, too, that the
former prosecution had ended; but we believe this
latter averment was not sustained by the proof and
that it was entirely proper for the court to direct a
verdict for plaintiff on the counterclaim on this
ground alone. Though it be true that plaintiff did not
move to set the prior judgment aside or appeal there-
from, it cannot be that the cause of action involved
in the prior suit was thereby concluded or its pros-

ecution ended. Indeed, the same cause of action has been successfully prosecuted here, for plaintiff seeks and has recovered substantial damages for defendant's wrongful violation of his primary right to have ordinary and reasonable care employed in and about the treatment of his hand. The mere fact that he omitted from the present petition certain separate specifications of negligence pertaining to the same course of treatment which may have contributed in part to his injury is immaterial, for the cause of action involved in that case proceeds here and its prosecution had not ended adversely to plaintiff at the time the court instructed the counterclaim for malicious prosecution out of the case. Where one has been prosecuted on an indictment containing several counts or in a civil action on a petition containing several counts, in which each and all of the counts declare upon separate and distinct causes of action, no one can doubt that he may maintain his suit for malicious prosecution on account of the counts of which he is discharged, after final discharge from some of the causes of action asserted in some of the counts, though the case continues to proceed against him on other counts of which he has not been finally discharged. Such and such only is the purport of the authorities on the subject. [See Boogher v. Bryant, 86 Mo. 42; Reed v. Taylor, 4 Taunt. 616.] But though such be true, the rule is wholly without influence, as it must be with respect to a case where the cause of action first declared upon still proceeds and its prosecution is not ended. There is, indeed, in this sense a marked distinction between the cause of action itself and a mere detail of negligence specified in the petition as one of the elements of wrong which contributed to the injury declared upon as the cause of action. One matter which it is essential to show in a suit for malicious prosecution is that the prior prosecution or suit is ended and plaintiff in the malicious prosecution

action is finally discharged therefrom. Until such appears, no cause of action as for a malicious prosecution has accrued for the very good reason that plaintiff in the suit alleged to have been maliciously prosecuted may finally prevail and thus put an end to the whole matter. In this view, the courts universally declare that where a suit or prosecution has been commenced and afterwards dismissed with the intention of commencing it over again on the same cause of action and it appears that it has been subsequently commenced thereon, such prior dismissal amounts to no more than a suspension of the prosecution and is not an ending thereof in the legal sense essential to support a suit for malicious prosecution of the prior action. In other words, until the subsequent suit on the same cause of action is finally disposed of adversely to plaintiff therein, defendant may not maintain a suit on account of its malicious prosecution, for in contemplation of law the prior suit is regarded as still pending. [See Schippel v. Norton, 38 Kan. 567; Sharpe v. Johnston, 76 Mo. 660, 672; Bacon v. Towne, 4 Cush. (Mass.) 217; 19 Am. & Eng. Ency. Law (2 Ed.), 680, 681, 685.] As the present suit was rightfully proceeding on the same cause of action as that declared upon in the prior suit, the court very properly instructed a verdict for plaintiff on defendant's counterclaim which predicated solely on the malicious prosecution with respect to specifications of negligence pertaining to the same course of treatment and contained in the same count of the prior petition asserting damages for the injury to plaintiff's hand which is here declared upon.

Defendant sought to introduce and the court excluded, over his objection and exception, evidence tending to prove that plaintiff assumed all risk incident to the use of the X-ray on his hand. It is argued this was error for which the judgment should be reversed. As we understand it, if this evidence had been

received, it would have revealed that before defendant applied the X-ray to plaintiff's hand he instructed plaintiff that it was a new mode of treatment, not well understood by the profession, and that it probably involved some danger, notwithstanding which, plaintiff said that he would assume all known and unknown risk incident to the use of the X-ray if defendant applied the same to his hand. It is argued, first, that the suit proceeds *ex contractu* and therefore this evidence was competent as tending to reveal what the true contract between the parties touching the use of the X-ray was. It is true that the petition avers that plaintiff " employed defendant for a reasonable compensation to be paid therefor . . . to treat plaintiff's right hand for eczema," but this does not render the suit one in contract, for such averment concerns only matter of inducement pertaining to the relation of the parties, in which the law implies the obligation on defendant to perform the duty assumed with due skill and care. Subsequent averments of the petition proceed as for a breach of this obligation which the law implies and annexes to defendant's calling of a physician and surgeon when he undertakes to serve persons in that capacity. In those cases where the law raises out of the contract of employment a duty which it annexes to the calling, as here, and the allegation is that such duty was negligently and carelessly breached, the courts declare the petition to proceed as in tort and treat the reference in the prior averment touching the contract of employment as mere inducement. [See Canady v. United Rys. Co., 134 Mo. App. 282, 114 S. W. 88.] Obviously the present suit proceeds as for the injury to plaintiff through the omission of defendant to exercise ordinary care and skill in the treatment and in no sense as for a breach of the contract of employment.

But it is said, though such be true, the law does not require a man to do more than he undertakes nor

in a manner different from what he professes and therefore it is competent to show that plaintiff agreed to assume all the risk of the hazard pertaining to the use of the X-ray. The matter of assumed risk is not pleaded in the amended answer and the court therefore excluded the offers of proof thereon by defendant. But we believe this was error, for it appears plaintiff introduced this question into the case by proof offered in chief in his own behalf. When such course is pursued, it is competent to consider the defense of assumed risk though it is not pleaded in the answer. Such has been expressly decided. [See Rigsby v. Oil Well Supply Co., 115 Mo. App. 297, 91 S. W. 460; Epperson v. Postal Tel. Co., 155 Mo. 346 l. c. 370, 371, 50 S. W. 795, 55 S. W. 1050.]    Furthermore, plaintiff is bound by the position he assumes at the trial. Numerous authorities so declare. [Stalzer v. Dold Packing Co., 84 Mo. App. 565, 574; Paving Co. v. O'Brien, 128 Mo. App. 267 l. c. 284, 107 S. W. 25; Northrop v. Diggs, 128 Mo. App. 217, 106 S. W. 1123.] Plaintiff introduced in evidence in his case in chief defendant's abandoned answer without any reservation or limitation whatever thereon. The portion of this answer relevant to the question here is as follows: ". . . that before applying said rays to plaintiff's hand, defendant informed plaintiff that the treatment of eczema by the use of Roentgen or X-rays was a new and imperfectly understood mode of treatment; that he would treat plaintiff in accordance with the rules set out by the best known writers and authorities on the use of the Roentgen or X-rays and the best known and generally accepted rules in use by the best known, experienced and most skillful physicians, surgeons, users and operators with the Roentgen or X-ray, and defendant informed plaintiff then and there that there was always peril to the patient under said treatment, which peril it was impossible for a physician to anticipate; that plaintiff told defendant if he, de-

fendant, would treat him with the said rays, he would assume all known and unknown risks incident to the use of said Roentgen or X-ray, whereupon defendant applied said treatment.'' Besides this, plaintiff tesified at the instance of his counsel fully concerning the conversation and agreement with defendant at the time the arrangement for the application of the X-ray was made. In this testimony, he professed to state the entire arrangement as to the employment of defendant and did not say that he had agreed to assume the risk. This evidence would seem to deny the recitals touching that matter contained in the abandoned answer which plaintiff introduced in evidence. It is certain that, as plaintiff introduced defendant's abandoned answer in evidence, the recitals therein touching his agreement to assume the risk incident to the use of the X-ray made a question for the jury concerning that matter. [Norton v. Ittner, 56 Mo. 351, 353.] Furthermore, as the proof introduced by plaintiff contradicted the recitals of the abandoned answer referred to, the subject-matter concerning the agreement to assume the risk was necessarily before the court at the instance and behest of plaintiff and he is bound by the position and theory he assumes. Assuming, then, that the matter of assumed risk was properly an issue in the case, it may be said that we believe the full measure of the agreement touching that matter should be regarded forbidden by the precepts of public policy alone. In this connection, defendant relies upon the case of Gramm v. Boener, 56 Ind. 497, l. c. 502, where it is said that if a surgeon advises against an operation as unnecessary and improper and the patient nevertheless still insists upon it, he ought to be concluded from thereafter asserting that the operation was improper and injurious. In that case, the court reasoned that the maxim *volenti non fit injuria* should apply for the reason that the operation so induced was performed at the instance and upon the judgment of

the patient and against that of the surgeon; but the precise question in judgment there is not involved here, for no one suggests that defendant advised against the use of the X-ray as unnecessary and improper and that notwithstanding such advice plaintiff implored it. Such alone was the question made in that case, while here it appears defendant advised the use of the X-ray as a proper treatment if plaintiff desired it, though he warned him that it was a new method which involved some danger. It is said the risk of this danger plaintiff agreed to assume if defendant would apply that treatment which in his judgment was proper and that plaintiff solicited the treatment. As to such matters, the parties are in no respect on equal footing. Defendant's position through education and experience is one which renders him competent to judge of the probable consequences which may result from the use of the X-ray and to speak with a degree of authority thereon. Plaintiff, a man unlearned with respect to the science of medicine and the use of surgical appliances, must rely upon the judgment of the physician so enlightened by learning and experience, and this he has a right to do, for so much is implied in the relation of physician and patient. If, then, on the request of the patient for such treatment, the physician advises the use of a particular appliance, such as the X-ray, to be proper, his patient undoubtedly may rely on this and act accordingly though the physician says, too, it involves some danger. But this particular phase of the matter relates more to the question of contributory negligence than to assumed risk and is unimportant, for the record seems to be devoid of evidence tending to prove contributory negligence on the part of plaintiff. Touching the matter of assumed risk, with which alone we are concerned here, it appears quite clear that if, in the circumstances stated, the parties contract with respect to the assumption of the

risk from such danger as is involved in the use of the X-ray, a new appliance not well understood, the risk assumed is one other and distinct from that which is introduced into the case by defendant's negligence. In other words, though plaintiff should be regarded as having assumed by his express agreement such risks as attend the employment of the X-ray, this agreement essentially implied a careful and skillful application thereof on the part of defendant. We deem it to be contrary to the precepts of public policy to declare such agreement valid in the full measure of its scope and entail upon plaintiff, as within it, the consequences of defendant's negligence in exposing his hand nine separate times within one-half inch of the tube; for consent concerning such matters avails nothing unless due care and skill is employed by the physician. [State v. Gile, 8 Washington 12; Commonwealth v. Pierce, 138 Mass. 165; 3 Wharton, Medical Jurisprudence, sec. 522; 22 Am. & Eng. Ency. Law (2 Ed.), 811.] In this view, the matter of the risk which defendant asserts plaintiff assumed amounts to no more than that which is assumed by the servant as ordinarily incident to the employment which the master affords him and the consequences of which risk it is declared may not be enlarged by the master's negligence or entailed upon the servant if it arises from the failure of the master to observe the precepts of ordinary care. [See Curtis v. McNair, 173 Mo. 270, 73 S. W. 167.]

But though such be true, the court erred in excluding defendant's evidence touching this matter, for it may be plaintiff's injury resulted from a risk which attended the application of the X-ray with due care and this he had agreed to take upon himself. It is true the instructions purported to submit the issue of due care and the want of it to the jury; but defendant was entitled to the benefit of plaintiff's express agreement which induced him to enter upon the course of

treatment, and if the jury should find the fact to be that plaintiff's injury resulted from dangers which usually attend the application of the X-ray with due care, the verdict should be for him on the ground of assumed risk. There is much evidence tending to prove that there were some dangers of burns to the tissues incident to the use of the X-ray at the time, in 1902, though ordinary skill and care were employed in applying it, but the matter of such dangers was not presented to the jury by instructions and the probative worth of this evidence was therefore denied to defendant through the ruling of the court which excluded the agreement of plaintiff to take such risk. Because of the errors mentioned, the judgment should be reversed and the cause remanded. It is so ordered. *Reynolds, P..J.,* concurs. *Caulfield, J.,* not sitting.