## KATE BORLAND HAYES v. HARRY M. LUFKIN.[1]

November 26, 1920.

No. 21,939.

**X-ray treatment — verdict sustained by evidence.**

In this, a malpractice case, the evidence stated in the opinion was sufficient to support a verdict charging a physician with negligence in administering the X-ray treatment to a patient suffering from eczema.

[1]Reported in 179 N. W. 1007.

147 M.—15.

Action in the district court for Ramsey county to recover $6,455.38 damages for malpractice. The answer alleged that plaintiff employed defendant to treat her for eczema on both of her legs; that defendant explained the treatment by X-ray and the probability of it being beneficial, and at the same time explained to her that there was always danger in using the X-ray of having a burn result, regardless of the care in its use and application; that plaintiff thereupon directed defendant to proceed to treat the eczema with the X-ray; that defendant used the greatest skill and care and was not guilty of any negligence whatever in the premises. The case was tried before Olin B. Lewis, J., who when plaintiff rested denied defendant's motion to dismiss the action, and at the close of the testimony denied his motion for a directed verdict, and a jury which returned a verdict for $6,200. From an order, denying his motion for judgment notwithstanding the verdict and denying a new trial, if plaintiff consented to a reduction of the verdict to $4,700, defendant appealed. Affirmed.

*C. D. & R. D. O'Brien,* for appellant.

*Lancaster, Simpson, Junell & Dorsey,* for respondent.

LEES, C.

This action was brought to recover damages for malpractice. Plaintiff had a verdict for $6,200, reduced by the court to $4,700, and defendant appealed from an order denying his alternative motion for judgment notwithstanding the verdict or for a new trial.

The assignments of error which were argued present but one question, viz.: Did the evidence establish defendant's alleged negligence? In considering the evidence we are guided by the rule that a physician is only bound to exercise such reasonable care and skill as is usually exercised by physicians in good standing in their profession, and have assumed that the rule applies to the treatment of disease by the application of X-rays. Henslin v. Wheaton, 91 Minn. 219, 97 N. W. 882, 64 L.R.A. 126, 103 Am. St. 504, 1 Ann. Cas. 19; Holt v. Ten Broeck, 134 Minn. 458, 159 N. W. 1073, Ann. Cas. 1918E, 256; Coombs v. King, 107 Me. 376, 78 Atl. 468, Ann. Cas. 1912C, 1121; George v. Shannon, 92 Kan. 801, 142 Pac. 967, Ann. Cas. 1916B, 338; Gore v. Brockman, 138 Mo.

App. 231, 119 S. W. 1082; Hales v. Raines, 162 Mo. App. 46, 141 S. W. 917.

In October, 1918, plaintiff went to defendant's office for a medical examination, in the course of which defendant discovered that she had eczema on both ankles. He advised the X-ray treatment of the disease, and began to give it in November, 1918. The patches of eczema were exposed to the X-rays six times in all at intervals of two or three days. Defendant testified that the left ankle was exposed for treatment on four occasions only, and the right ankle on each of the six occasions when treatment was administered, and that on the first four occasions both ankles were exposed to the rays at the same time. The parties differ in their testimony as to the duration of the exposures. Plaintiff testified that they continued for 20 minutes, and defendant that they lasted from 10 to 15 minutes. It was testified that when the human skin is exposed to the rays for a sufficient length of time a condition somewhat similar to sunburn is developed, technically known as a reaction, and indicating, where eczema is being treated, that the rays have taken effect. After each treatment defendant looked for a reaction, but saw no evidences of it until after the final exposure. A little later the evidences of a reaction became pronounced, for on December 12, 1918, plaintiff's left ankle was blistered and ulcerating. Thereafter and until January 21, 1919, defendant treated her for the sore on this ankle, which quite clearly was the result of a burn caused by exposure to the X-rays. On the last mentioned date she dismissed him and consulted another physician, Dr. Carlaw, of Minneapolis. Defendant testified that when plaintiff left him there was an open sore on her left ankle about two inches in diameter and that her right ankle was free from eczema and uninjured by the six exposures to the X-rays. Dr. Carlaw continued to dress the sore until the latter part of March, 1919, when he had plaintiff taken to a hospital and removed a quantity of scirrhous or dead tissue from her ankle and also removed part of the Achilles tendon. He testified that the dead tissue was the result of an X-ray burn. The sore did not entirely disappear, and in January, 1920, plaintiff had to undergo a second operation for the removal of more dead tissue. At the time of the trial the wound had not yet healed, and the physicians were unable to state definitely when it would heal.

All the witnesses agreed that the X-ray treatment of eczema is common and that it should not result in a burning of the tissues. Defendant testified that when the treatment was administered plaintiff's feet were brought together, the left foot above the right; that he endeavored to arrange them in such a position that the focus of the X-ray tube would be on the diseased portion of both ankles, and that the position of the tube varied with the position assumed by the patient. He also testified that there was a device on his machine to measure the electric current, but he did not use it, because it would not measure the amount of current going through the tube, but that he could estimate it fairly accurately. He admitted that modern machines are equipped with a device which exactly records the current passing through the tube and that the amount of current is an important factor in administering the treatment. He also testified that where treatments are given as frequently as every other day the effect of the X-rays is apt to be cumulative; that, nevertheless, seeing no evidences of any reaction until after the sixth exposure, he continued to repeat the exposures, testifying in explanation that the time when a reaction is likely to appear is variable, depending on the condition of the patient. He accounted for the fact that plaintiff's left ankle was burned while the other was not on the theory that there was an unexpected reaction in the left ankle—something different from what is normally to be expected, due to an idiosyncrasy or peculiar pathological condition in the flesh of the left ankle. To strengthen this theory he pointed to the fact that there was more eczema on the right than on the left ankle, and that it received two more treatments than the left and was not burned at all.

As part of her case in chief plaintiff introduced the testimony of Dr. Harrington, an expert in the use of the X-ray in the treatment of diseases. He had examined her ankle a short time before the trial and testified that in his opinion it had received more than a skin dose of X-rays, which is the limit of the amount the skin will receive without burning; that a physician reasonably skilled in the use of the X-ray machine can measure with a fair degree of accuracy the dose administered to a patient; that no more than a skin dose should be administered in treating eczema; that the method of applying the treatment varies with the extent of the disease and the age and general condition

of the patient and is dependent upon the judgment of the physician who administers it.

Dr. Fullerton, another expert, testified in plaintiff's behalf that the effect of a skin dose does not vary in different individuals, but is a fixed dosage required to produce a certain reaction on the human skin; that there are certain known standards of measurement of a skin dose, and with a modern machine a reasonably skilled operator can measure it; that three factors enter into the effect of the ray, the distance of the target of the tube from the skin, the amount of electric current passing through the tube, and the time of the exposure; that, in his opinion, based on defendant's testimony as to the manner in which plaintiff's ankles were placed, they did not receive an equal dosage; that the left ankle received about 25 per cent more of the active rays than the right; that in administering the treatment the rays can be focused as the rays of the sun are concentrated by an ordinary burning glass and that the, method followed resulted in the two ankles being exposed at unequal distances from the center of the focal field; that the modern method of treating eczema by the X-ray is to wait 10 days or two weeks after each exposure for a reaction, and, if none then appears, to expose the patient to the rays again, and that he was of the opinion that the burn described by Dr. Carlaw could not be ascribed to any idiosyncrasy peculiar to plaintiff's left ankle.

There was no other medical testimony. Viewing the evidence in the light most favorable to plaintiff, it was sufficient in our opinion to support the verdict of the jury. Reasonable men might honestly differ in their opinions respecting defendant's alleged negligence in treating plaintiff in the manner described in his own testimony. The fact that her right ankle was not burned and that the disease yielded to the treatment administered to that ankle is a circumstance entitled to much weight, but it is not a controlling circumstance when considered in connection with the testimony of plaintiff's experts and the admitted fact that the left ankle was so seriously burned. The court's instructions were as favorable to defendant as he could expect. He finds no fault with them or with the amount of the verdict as reduced. The learned trial judge

has approved of the verdict and the case is not one for interference on our part.

The order appealed from is affirmed.