MILFORD QUICKSTAD v. J. L. TAVENNER.[1]

January 10, 1936.

No. 30,601.

*Thomas H. Quinn,* for appellant.
*Gallagher, Madden & Gallagher,* for respondent.

STONE, JUSTICE.

In this action for malpractice the defendant doctor got a directed verdict. Plaintiff appeals from the order denying his motion for a new trial.

[1]Reported in 264 N. W. 436.

The alleged malpractice occurred November 23, 1932, at the home of plaintiff's brother in Waseca, when defendant, in treating plaintiff for pleurisy with effusion, attempted to "tap his chest." He inserted an 18-gauge hypodermic needle posteriorly between the seventh and eighth ribs. He had succeeded in drawing off by means of a syringe about a cubic centimeter and a half of fluid from between the pleura and lungs when, due to a sudden movement of plaintiff, the end of the needle broke off inside the thoracic cavity. Defendant was unable to remove it at the time, and subsequent X-ray examination at the University of Minnesota Hospital, to which defendant caused plaintiff to be taken promptly, showed the fragment lodged in such position that its removal was inadvisable if not impossible. Plaintiff has recovered from the pleurisy, but the needle fragment in his chest causes him considerable pain and some disability.

Plaintiff's case is based solely on certain alleged admissions of defendant made immediately after the accident upon which, it is claimed, the jury could have found him guilty of negligent malpractice for using too small a needle; for failing to take proper precautions to prevent such movement of plaintiff during the operation as that which caused the needle to break; and for attempting an operation which he knew he was incompetent to perform. The alleged statements, all denied by defendant, are that he "broke the needle"; that he "should have used a stronger needle"; that he "shouldn't have done it" and would "never try it again"; that the accident "couldn't be helped" because of "the handicap" he was working under. There was testimony also that defendant requested plaintiff and members of his family not to tell anyone of the accident. Such request, if made, adds nothing of probative value. The motion might well have been to afford some measure of protection for defendant's professional reputation from the damaging effect of what in any event was an unfortunate result.

As an expert witness for plaintiff, the staff doctor of University Hospital who had been in charge of plaintiff's examination was called. Apparently it was expected by his testimony to prove that defendant had negligently used too small a needle. He had ad-

mitted stating to counsel prior to the trial that a 20-gauge needle was not commonly used in tapping the chest. But his testimony was that a smaller, even a 22-gauge, needle might be used with propriety, and that resort to an 18-gauge needle could not be considered improper.

The only question is whether the facts thus disclosed made a case for the jury. We hold that they did not.

The contention that defendant himself admitted lack of the requisite skill to perform the operation is not sustainable. There ·is no evidence that defendant ever made any such admission expressly, and reasonable implication cannot make over into such an admission any words ascribed to him. It may be assumed that the jury could have concluded that defendant himself believed that if he had used a stronger needle or had taken greater precautions to prevent plaintiff's moving during the operation the needle would not have broken. Yet, regardless of whatever defendant himself thought of the matter, if in fact he conducted the operation according to the accepted standard of his profession, he cannot be held guilty of malpractice.

The rule is that "a physician or surgeon  *  *  * is only required to possess and exercise the degree of skill and learning ordinarily possessed and exercised, under similar circumstances, by the members of his profession in good standing, and to use ordinary and reasonable care and diligence, and his best judgment, in the application of his skill to the case." 48 C. J. 1113. Clark v. George, 148 Minn. 52, 180 N. W. 1011; Hayes v. Lufkin, 147 Minn. 225, 179 N. W. 1007. It follows that the question whether the treatment constitutes malpractice can ordinarily be determined only by the aid of competent professional opinion defining and sometimes applying the proper standard. Lorenz v. Lerche, 157 Minn. 437, 196 N. W. 564; Berkholz v. Benepe, 153 Minn. 335, 190 N. W. 800.

The argument for plaintiff is that, because of defendant's alleged admissions, that general rule does not apply—that the admissions alone made a case for the jury. The answer is that with truth assumed for all of the alleged admissions it does not follow that de-

fendant has been guilty of malpractice. There is still no evidence from which the jury could have found reasonably that he failed to perform the operation according to an accepted standard of his profession. The test is not whether the physician used his own best skill and ability. No one is always at his best. In the absence of special agreement, one employing a physician has only a right to expect the ordinary skill and ability of his profession. If he lacks that, it is no defense that he did his own best. So, also, if an individual physician possesses greater than average skill, he is still not liable for malpractice so long as he uses the degree of skill and care of the average member of his profession. If the rule were otherwise, it would always be necessary to establish the particular physician's endowments of skill and ability, and there could be no fixed standard as to the amount of ability which a patient would have a right to expect. Loudon v. Scott, 58 Mont. 645, 194 P. 488, 12 A. L. R. 1487 (holding that negligence on the part of the surgeon could not be inferred from the fact alone that his patient died under the anesthetic administered prior to an operation).

Of course, admissions are competent as evidence. That is all that is held by two of the cases cited by plaintiff, Zandan v. Radner, 242 Mass. 503, 136 N. E. 387, and Barnett v. Roberts, 243 Mass. 233, 137 N. E. 353. The controlling question now is whether the admissions properly received in evidence go far enough as proof to make a *prima facie* case for plaintiff, who had the burden of proof. For the reasons stated, we hold that they do not. In Hafemann v. Seymer, 195 Wis. 625, 219 N. W. 375, the defendant physician had admitted "that he was to blame for the death of plaintiff's wife." But the verdict against him had other and independent evidence of negligence in its support, and, incidentally, the admission itself went much further than anything in this case. In Tully v. Mandell, 269 Mass. 307, 308, 168 N. E. 923, there was another admission by defendant, a dentist, that the bad result "was all his fault." There was a reversal because of the refusal of the trial judge to grant the defendant's request for an instruction that defendant's admission ("that it was his fault the needle broke") was not conclusive. There is no admission in this case that the needle used on plaintiff

broke through fault of defendant. Compare Donoho v. Rawleigh, 230 Ky. 11, 18 S. W. (2d) 311, 69 A. L. R. 1135. In Harju v. Allen, 146 Minn. 23, 25, 177 N. W. 1015, the involved treatment was "admittedly improper." We recognized there, following Getchell v. Hill, 21 Minn. 464, 465, that "there may be cases where, the mode of treatment having been shown," the jury may properly determine that the injury or failure to cure was due to unskilful or negligent treatment. For reasons already stated, this is not such a case.

The order appealed from is affirmed.