MARGARET CASSIDY v. E. M. McLAUGHLIN AND OTHERS.[1]

March 24, 1939.

No. 31,972.

*Sexton, Mordaunt, Kennedy & Carroll* and *Leo F. Murphy,* for appellants.

*Allen V. Junkin,* for respondent.

HOLT, JUSTICE.

Plaintiff recovered a verdict of $3,000 in this action for malpractice, and defendants appeal from the order denying their motion in

[1]Reported in 285 N. W. 889.

the alternative for judgment notwithstanding the verdict or a new trial.

The record shows without dispute that plaintiff, 68 years of age, a resident of Wabasha, afflicted with an incipient cataract of her right eye, came to be treated therefor to the clinic of defendants Dr. McLaughlin and Dr. Nauth at Winona, this state. She was accompanied by a friend, Mrs. Carver, 78 years old, who also sought treatment for her eyes, when, on September 9, 1937, defendant Dr. Walker, the eye specialist employed by the clinic, injected under the conjunctiva of plaintiff's right eye five drops of a solution of oxy-cyanide of mercury, the solution being one part of the drug to 10,000 parts of distilled water. The purpose of the injection was to set up an irritation or inflammation to stimulate circulation in the eye and thereby arrest or retard the cataract. Of that solution a dose up to 20 drops is considered safe. The professional skill and ability of Dr. Walker is not questioned. Nor does the evidence suggest lack of learning, care, and skill of the pharmacist, employed by the clinic ten years, who testified concerning the preparation of this solution used from the drug mentioned procured from a reputable dealer. The solution thus prepared was placed in a bottle having a rubber cork so contrived that the hypodermic needle used for injections is thrust through the cork and when filled and withdrawn the bottle is left hermetically sealed, thus preventing contamination and evaporation of the solution. Dr. Walker testified that over 20 injections from the same solution used in plaintiff's eye had been made into the eyes of different persons without any untoward results except as to plaintiff, Mrs. Carver, and one Mrs. Hays. There was no direct testimony controverting the foregoing statement. Furthermore, the evidence is in accord that the injection of the drug mentioned in the eye, in the treatment for the malady plaintiff was afflicted with, was in accordance with good standard practice of eye specialists. Defendants can only be held liable for the negligence or fault of Dr. Walker or the pharmacist of the clinic who prepared the solution. The mere fact that the injection caused excessive reaction or bad results to plaintiff does not prove that

either Dr. Walker or the pharmacist of the clinic was negligent. Nelson v. Dahl, 174 Minn. 574, 219 N. W. 941.

Dr. Walker was called by plaintiff for cross-examination under the statute and admitted that the reaction from the injection in plaintiff's eye was greater than anticipated or usual, and that the same excessive reaction resulted from a like injection of the same solution in Mrs. Carver's eyes made on the same date, September 9; he also admitted that one Mrs. Hays of Wabasha had had an injection of the same solution on September 2, with about the same excessive reaction. He observed the excessive reactions in plaintiff's and Mrs. Carver's eyes when they returned to the clinic on September 16. There is nothing to show whether he observed excessive reaction in Mrs. Hays' eyes before or after September 9. After the 16th of September the doctor saw and treated plaintiff September 21 and 27 and on October 2. On the last date the swelling and irritation had somewhat abated. The only other visit to Dr. Walker was November 4, when he noted some improvement of vision in the eye. The vision in the left eye appears to have been perfect.

Dr. Benedict and Dr. Replogle were plaintiff's medical experts. The latter did not profess to be an eye specialist. He resided where plaintiff did and had advised with her, but never attempted to treat or prescribe for her eye. He expressed no opinion as to Dr. Walker's treatment. Dr. Benedict, the eye specialist in the Mayo clinic at Rochester, examined and began to treat plaintiff's eye December 28, 1937, and treated it three times in January, 1938, on February 24, March 22, and April 25. He characterized the condition of plaintiff's eye as a chronic inflammation, but was of the opinion that it would not last longer than six months. While Dr. Benedict in his practice does not use oxycyanide of mercury to produce irritation in the eye, he testified that it was good standard practice among eye specialists to so use it. Defendants called three experienced eye specialists: Doctors Grant, Larsen, and Frank Burch, —the last named was referred to by Dr. Benedict as "one of the outstanding eye doctors of the United States." All three testified that the injection of the solution mentioned in the treatment of

incipient cataract is good standard practice of eye specialists. Dr. Burch gave his opinion that a safe dose of such a solution as Dr. Walker purported to use was up to 15 or 20 drops. These three experts gave their opinion that the unexpected excessive reaction in plaintiff's eye resulted from either some focal infection in her body or from her supersensitivity to the drug. Dr. Burch testified that he had experienced that in his own practice when into the eyes of two patients had been injected the same dose of the same solution which had been injected into the eyes of other patients producing normal and expected irritation, but which as to the two referred to produced the same excessive and unexpected irritation. Common experience teaches that whether a drug is injected into the tissues or the blood stream or taken internally, the reaction is not the same in all persons of the same age or apparent same condition, and, even as to the same person, it varies greatly at times, depending upon the physical or mental condition of the patient.

The learned trial court recognized that something more than an undesired or bad result must be proved in order to recover for malpractice; but deemed such proof might be found in Dr. Walker's admission, testified to by plaintiff and Mrs. Carver, but denied by him, that he had injected too much of the solution; and also in Dr. Walker's admission on the witness stand that the reaction in Mrs. Carver's and Mrs. Hays' eyes had been about as excessive as in plaintiff's. We think there is no probative worth or value in either the disputed or undisputed admissions. Mrs. Carver testified that when they returned to the clinic September 16 this occurred:

Q. "And what, if anything, did Dr. Walker say to you both concerning the reaction?

A. "He said he expected reaction, but not so much as that.

Q. "Anything further about the amount used?

A. "He said he used too much. Now, that may not be the exact words, but it meant that.

Q. "Now, either on that or a subsequent visit was anything said with respect to the bottle by Dr. Walker?

A. "He said he had ditched the bottle."

The doctor denied that he said he had used too much or ditched the bottle. Mrs. Carver testified not at all as to the effect of the injection upon her eyes, nor was there any other testimony, expert or otherwise, offered respecting the result of the injections in either Mrs. Carver's or Mrs. Hays' eyes. The undisputed evidence that a dose of more than three times that used would be safe, together with the absence of any suggestion that the needle used would hold an overdose, or that it was refilled, shows the weakness of the disputed admission. The admission that there was an excessive reaction with respect to Mrs. Carver and Mrs. Hays similar to plaintiff's has no probative value, because there is no suggestion in the evidence that it persisted longer or more severely than expected or usual. The expert testimony was that the inflammation sought from the injection of the drug persisted from a few weeks to a few months. No specific time could be predicted for the reaction to expend itself. There is no suggestion or claim that Dr. Walker's treatment of the excessive irritation, observed by him on September 16, was improper.

There are no facts proved in this case from which the jury without the aid of expert medical testimony could find malpractice in the treatment of plaintiff's eye. In Moehlenbrock v. Parke, Davis & Co. 145 Minn. 100, 176 N. W. 169, there was evidence that the doctors noticed something was wrong with the anesthetic being used in time to have averted death had they acted with due care. Johnson v. Arndt, 186 Minn. 253, 243 N. W. 67, was a case of the removal of tonsils wherein the local anesthesia used was nupercaine. The patient died directly after the operation. Another patient who had her tonsils removed by the same doctor using the same local anesthesia also died. There appears to have been evidence from which the jury could have found that this other patient died just before Mrs. Johnson's operation began. Yet this court granted a new trial, concluding that the evidence was insufficient to prove death due to the negligence of the doctor.

Courts rightly scrutinize the evidence in malpractice cases to ascertain whether there is proof sufficiently pointing to negligence or lack of the requisite care and skill of the doctor as the cause of

the alleged injury so that the basis for the verdict be not a mere conjecture or guess. There is no need to discuss or refer to the applicable principles of law. The trial court stated them to the jury in a model charge. But our study of the record leads to the conclusion that it is barren of proof that the protracted irritation or inflammation of plaintiff's eye is due to the negligence of defendants in the treatment of the incipient cataract. It is enough to refer to the last four malpractice cases in this court, which also cite and discuss prior decisions: Quickstad v. Tavenner, 196 Minn. 125, 264 N. W. 436; Yates v. Gamble, 198 Minn. 7, 268 N. W. 670; Williamson v. Andrews, 198 Minn. 349, 270 N. W. 6; Nelson v. Nicollet Clinic, 201 Minn. 505, 276 N. W. 801. To these may be added Semerjian v. Stetson, 284 Mass. 510, 187 N. E. 829, where it was held that admissions of an eye doctor somewhat similar to those made by Dr. Walker September 16, 1937, as testified to by plaintiff and Mrs. Carver, were insufficient upon which to base a recovery for malpractice.

Of course we do not overlook the fact that there is no dispute that the origin or start of the irritation or inflammation which Dr. Benedict found and which still persisted at the time of the trial came from the injection Dr. Walker made September 9, 1937. But that does not prove or tend to prove negligence, for all the experts agree that starting an irritation in the eye to stimulate circulation is the standard practice in the treatment of incipient cataract. What causes the inflammation to persist is unknown to the medical experts. As we read Dr. Benedict's testimony, plaintiff's only expert eye specialist, he does not venture any opinion that attributes the prolonged persistence of the irritation in plaintiff's right eye to any fault, want of skill, or negligence of defendants or any of them.

While of the opinion that the evidence does not sustain the verdict, we think it not a proper case in which to order judgment notwithstanding the verdict.

The order is reversed with direction to grant a new trial.

Mr. Justice Hilton, being incapacitated by illness, took no part.