ERNEST V. PADRICK v. GREAT NORTHERN RAILWAY COMPANY.[1]

January 22, 1915.

Nos. 18,949—(171).

**Damages excessive.**

In this, a personal injury action where the evidence shows an injury to the spinal cord which has permanently crippled plaintiff, virtually destroyed all earning capacity, and so paralyzed him that he is unable to attend to his wants without assistance, it is *held* that, although the injuries are so severe, the verdict of $35,000 is excessive and should be reduced to $30,000.

Action in the district court for Ramsey county to recover $50,000 for personal injuries received while in defendant's employ. The case was tried before Kelly, J., and a jury which returned a verdict of $35,000 in favor of plaintiff. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Modified.

*M. L. Countryman* and *A. L. Janes,* for appellant.

*Samuel A. Anderson* and *A. F. Storey,* for respondent.

HOLT, J.

Plaintiff, while in the employ of defendant as an express messenger, was injured in a train collision. He was then 33 years old, earning $65 per month. Fourteen months after the injury a verdict

[1] Reported in 150 N. W. 807.

---

Note.—As to the extent and character of developments following personal injury for which person inflicting the injury is liable, see note in 48 L.R.A.(N.S.) 93.

for $35,000 damages was rendered. The court refused to reduce or set it aside. Liability is conceded. The appeal presents the single question: Is the verdict excessive?

At the time of the collision plaintiff was lying on the floor of the express car sleeping. Just how the injury was received is not disclosed. When he awoke to consciousness he was paralyzed so that the only member of his body he could move was his right leg, and that only to a very limited extent. His head was cut and contused. Subsequent examinations by physicians indicate that in some manner the spinal column at about the sixth cervical vertebra was injured. The theory of the medical experts seems to be that because of this injury to the vertebra a blood clot formed at that point in the spinal cord, and as the clot was absorbed the paralysis abated to a certain extent. But the opinion of every physician examined is that such a scar or injury resulted to the cord that the functions of the nerves involved are permanently destroyed or impaired; and the unanimous conclusion is that there is no hope for any improvement in plaintiff's present condition, except insofar as it may be ameliorated by his becoming more accustomed to handling himself. Plaintiff's mind and vital organs are not affected. He is well nourished. The motor nerves controlling his left side seem to be almost entirely gone. He can move the fingers slightly, but the thumb not at all. The sensory nerves in that side still carry on their functions. A tap at any part of the left side of the body causes an extensive and distressing muscular quiver or jerking. These spasms in the muscles also occur without any apparent cause and include the muscles of the bowels, according to plaintiff's testimony. In this he is confirmed by the opinion of medical experts. The right arm has now about three-fourths of its normal strength. The doctors think the right leg has its ordinary strength. This plaintiff disputes. However, the sensory nerves on the right side are greatly impaired. There is numbness in the right leg and arm and an inability to distinguish between heat and cold. If an object is placed in the right hand, plaintiff cannot by the sense of touch tell the form or have any idea as to what it might be. With the aid of a cane or a crutch he can now move himself for a distance of four

or five blocks, but is then exhausted.    This can only be done by a wriggling process of the body.    Poising himself on the right leg he is able, by a twist or a swing of the whole body, to throw the left leg somewhat forward; then the left leg serving as a peg or support, aided by the cane, enables him to advance the right foot for the next step or throw.    In the movement there is a quivering and jerking of the left arm and leg and the toe drags on the ground.    Plaintiff is unable to dress or undress himself, or attend to his wants alone. He complains of a severe pain and weakness.    One whose natural powers and functions are to such a large extent destroyed or impaired, as is the case with plaintiff, no doubt also experiences a detrimental effect in parts of the body not directly affected, thus causing a general weakness and even pain.    The record indicates more in detail to what helpless and pitiable condition a young, strong and healthy person has been reduced.

The verdict is very large and we realize that it would not take more than about one-third thereof to compensate for the lost earning capacity, and about an equal amount perhaps, to procure the needed personal attendance.    Does the balance more than compensate for plaintiff's sufferings, discomforts, humiliation and deprivation of all those enjoyments and anticipations of life ordinarily experienced by persons in possession of the usual physical powers and capabilities?    But one verdict exceeding in amount the one in this case has been sustained in this court.    In McMahon v. Illinois Central R. Co. 127 Minn. 1, 148 N. W. 446, plaintiff was awarded $39,000 for the loss of both legs and practically one arm.    The appellant there virtually conceded that the verdict was not excessive, unless it was found that a reduction should have been made by the jury for plaintiff's contributory negligence, the action being under the Federal statute. A verdict of $35,000 was sustained against the contention of its being excessive in Clay v. Chicago, M. & St. P. Ry. Co. 104 Minn. 1, 115 N. W. 949, but it must be admitted that the accident to young Clay left him in a much more helpless and pitiable state than plaintiff finds himself in, bad as it is.

A verdict for the same amount was upheld in St. Louis Southwestern Ry. Co. v. Waits, 164 S. W. 870 (Tex.) where a young married

woman had both legs cut off, one at the ankle and the other below the knee. The court there observed: "To say that we apply the rule of compensation in allowing recoveries in such cases really falls far short of stating the truth. There can be no adequate compensation for the loss of such members." In Huggard v. Glucose Sugar Refining Co. 132 Iowa, 724, 109 N. W. 475, a verdict of nearly $33,000 for injuries resulting in paralysis from the region of the small of the back down to the toes was held not excessive, but the plaintiff was practically bound to his bed. Goetzke v. City of Chicago, 174 Ill. App. 446, was a case where $25,000 was allowed for injuries from an electric current whereby plaintiff's hands were so burned that he had "practically no use of his right hand and has only the use of the thumb and forefinger of the left."

Among the large verdicts upheld in this court may be cited: Whitehead v. Wisconsin Central Ry. Co. 103 Minn. 13, 114 N. W. 254, 467; Sprague v. Wisconsin Central Ry. Co. 104 Minn. 58, 116 N. W. 104, for $30,000 each, and Jenkins v. Minneapolis & St. Louis R. Co. 124 Minn. 368, 145 N. W. 40, for $25,000.

Though the injuries in the cases mentioned were not the same as those in the case at bar, all are nearly alike in the grave and distressing results to the one injured. However, since no money compensation can ever be adequate for permanent personal injuries of such serious character as the ones here involved, it is apparent that courts, or legislatures, must fix some limit, arbitrary though it be, upon the amount of recovery. Otherwise there will be a tendency to paralyze human endeavor, for these deplorable accidents do happen and, if there be no limit to a recovery, few enterprises will be strong enough financially to survive a verdict of a jury in personal injury actions of serious consequences. Although we recognize that the trial court is in better position to appreciate the injuries for which damages are awarded than is the appellate court, we feel that this is a case where a substantial reduction should be made in the verdict. As stated above the record shows that plaintiff has the appearance of being well nourished, he is not bedridden, he can move about to a limited extent, his mind is unimpaired, and one doctor was of the opinion that he might be able to do some easy clerical work. Upon a con-

sideration of the whole case we are of the opinion that the verdict should be reduced to $30,000.

If, within 10 days after remittitur is filed in the court below, plaintiff files his consent to a reduction of the verdict to $30,000, the order appealed from will stand affirmed. Otherwise a new trial is granted.