BEULAH PREVEY v. A. T. WATZKE.[1]

January 16, 1931.

No. 28,108.

*Doherty, Rumble, Bunn & Butler* and *Alfred H. Winter,* for appellant.

*Murphy, Johanson & Nelson,* for respondent.

[1]Reported in 234 N. W. 470.

HILTON, J.

Defendant appeals from an order denying his motion for a new trial.

Plaintiff recovered a verdict of $12,000 against defendant, a licensed dentist, for malpractice. Plaintiff, 33 years of age, was a nurse of five years' experience. On March 5, 1928, suffering with an impacted right upper third molar (wisdom tooth) she went to defendant's office. He advised its extraction and undertook the operation. He was not accustomed to the removal of such teeth, usually sending such patients to a specialist for that purpose.

Defendant first administered novocaine to plaintiff's gums, and in half an hour, when its effects began to wear off, he injected more. He stated that the work done by him occupied one hour, while evidence on the part of plaintiff placed the time at one and a half to two hours. The impacted tooth was of a medium size with a single straight root. In his work he used a lancet, forceps, an elevator, and a bore driven by an electric engine. He did not get the tooth out although he told plaintiff and her brother that he did. When asked for the tooth, he stated it had been broken up and thrown away. He had removed some pieces of bone. He had felt in the back part of plaintiff's mouth with his finger and discovered a bony ridge and went in for it, thinking it was the tooth. He collected two dollars for each of two X-rays taken and five dollars for extracting the tooth.

Suffering great pain and discomfort, plaintiff a few days later went to Dr. Kelley, another licensed dentist practicing in the same locality as the defendant. Dr. Kelley extracted the tooth easily in about five minutes, prying it out with an elevator. There were no marks on the tooth; it had not been touched by defendant's instruments. Dr. Kelley found that the flesh had not been cut away from the top of the tooth by defendant, nor was there any opening in it.

He further found in the right rear inside of the roof of the mouth a hole one and one-fourth inches deep and one-half of an inch in diameter. It was beyond the immediate area and vicinity of the

tooth to be removed. Defendant said he did not remember making the hole, but the jury was more than justified in finding that he did. In making it, bone, muscles, and blood vessels had been crushed and removed, and the palatine nerve severed. The extent of plaintiff's injuries will be referred to later.

■ Dr. Kelley made his extraction by taking hold of the tooth from the outside of the jaw. When on the stand for cross-examination under the statute (the first witness) defendant stated that he went after the tooth from the inside and volunteered the statement, not in answer to any question, "I thought that was the proper way, and it was the proper way."

Later, while Dr. Kelley was testifying as a witness for plaintiff, he was asked: "In the removal of impacted wisdom teeth, should the careful practitioner, in the exercise of ordinary care, in general practice in doing that work in this community, attempt to get at the tooth from the inside?" The question was objected to as incompetent, irrelevant, and immaterial, calling for a conclusion of the witness, and not the proper test of negligence. The court overruled the objection, and the witness answered: "He wouldn't attempt it from the inside." The witness was further asked: "In getting this tooth out, was it necessary, in your judgment and from your experience and knowledge of this case, to do any of that cutting into the bone that he did there?" The same objection was interposed, and the witness was permitted to answer "no."

Another qualified expert was asked: "From your knowledge of this matter of the removal of impacted teeth, and your knowledge of the anatomy of the mouth and the location of the nerves and the purpose of these nerves, and all conditions involved in this particular case, if we assume that Dr. Watzke made this hole there, as Dr. Kelley testified, was that necessary for the removal of an impacted wisdom tooth?" This was objected to as incompetent, irrelevant, and immaterial, no proper foundation, and not the proper test of negligence. The objection was overruled, and the witness answered "no." He was further asked: "Was any part of the making of that hole that Dr. Kelley testified he found there, if we assume

that it was made there by Dr. Watzke, necessary?" The same objection was interposed with the same ruling. Other questions of the same nature with the same objections and same rulings followed, resulting in answers to the effect that it was not the proper way to attempt the extraction and that it should have been from the outside.

Defendant when on the stand in his own behalf testified that there was no such hole in plaintiff's mouth when she came to see him; that to make such a hole would have been bad practice; that there would be no sense in the world for a dentist to make such a hole, and other testimony along the same line. He also stated that a hole such as Dr. Kelley says he found could not have been utilized in any way in getting out an impacted tooth. He further stated that it was not necessary to destroy the nerves that were destroyed in order to take out an impacted tooth and that it would be very bad practice.

The trial court was not in error in its rulings on the admission of the evidence of the two experts hereinbefore referred to. The rule announced in Berkholz v. Benepe, 153 Minn. 335, 190 N. W. 800, and approved in Lorenz v. Lerche, 157 Minn. 437, 196 N. W. 564, was in no way violated even if the facts brought this case within the rule.

The defendant had voluntarily stated that going after the tooth from the inside was good practice. He himself raised the practice issue. It practically covered the question of negligence. Plaintiff had the right to introduce evidence to contradict defendant's original claim of good practice.

Taken in connection with the other testimony of the defendant when on the stand in his own behalf and also other evidence received without objection, he was in no way prejudiced by the rulings. He had by his own testimony of inexperience shown his incompetency to do the work. None of defendant's expert witnesses attempted to show that his work was performed properly or in the usual way.

Plaintiff insists with some force that it was not even a question of good practice for it was conceded that the cutting of the hole was not necessary and was wrong.

It might even be, in the absence of any satisfactory explanation, that defendant's work was so manifestly wrong that intelligent laymen might so find without expert testimony. Defendant was employed to extract a tooth, not to dig a hole in the roof of plaintiff's mouth with the resultant injuries. Vergeldt v. Hartzell (C. C. A.) 1 F. (2d) 633. The question as to whether defendant was negligent was clearly for the jury; its finding of negligence was overwhelmingly established by the evidence.

■ Plaintiff's loss of hearing was one of the elements of damage. The complaint alleged loss of hearing in her right ear only. The evidence on the part of both plaintiff and defendant established practically a total loss. There was evidence developed on both sides as to some loss of hearing in the left ear, all without objection. Although the evidence was in conflict, the jury was justified in finding that the loss of hearing in the right ear was due to and caused by the work defendant did in plaintiff's mouth.

The court in charging the jury said in part:

"No recovery can be had by the plaintiff on account of any loss of hearing (unless it is shown by the greater weight of the evidence that she suffered loss of hearing as the proximate and natural result of defendant's unskilful or negligent work in undertaking to extract the impacted tooth)."

Counsel for defendant requested the part of the charge not appearing in parentheses. No request was made by him that the instruction be limited to loss of hearing in the right ear. The court at the close of the charge asked for suggestions. None were made as to the hearing feature.

An expert for the plaintiff specifically stated that he had no idea where the trouble in the left ear started or whether it existed prior to the injury or arose since. It was thus eliminated from consideration as an element of damage. No particular significance was attached to it by anyone. Manifestly the situation was fully and

properly covered by the court's charge; the jury had been told that they could allow damages only for such loss of hearing as was the proximate and natural result of defendant's unskilful or negligent work. Error in the charge cannot be successfully asserted.

■ ·Plaintiff was in good health before the defendant operated upon her, but since then she has been irritable, nervous, and melancholy. For about six weeks she had a very disagreeable infection in her mouth and throat.

She has no sensation on the upper right side of her mouth and the right back part of her tongue. This condition will be permanent. She can open her mouth only one-half of the normal extent and has difficulty in eating and swallowing. When food gets on the right side of her mouth while eating it falls out; there is no sense of taste therein. She is always conscious of and embarrassed by her infirmities.

For four weeks she continuously had severe pains back of her right ear in the region of the mastoid process. Afterwards they came at intervals of a day apart, then a week or two apart, and generally lasted about 12 hours. There was no change for the better during the six months just before the trial. Her injuries are of a serious and permanent nature.

From the foregoing partial recital of her injuries taken in connection with her loss of hearing attributable to the negligence of appellant, it cannot be said that the verdict of $12,000 is excessive. Counsel for appellant cites the case of Padrick v. G. N. Ry. Co. 128 Minn. 228, 150 N. W. 807, L. R. A. 1915F, 1, where a $35,000 verdict was reduced to $30,000. Padrick's injuries were much greater than those of plaintiff in this case. However that case was decided in 1915. This court has frequently in decisions referred to the difference in the purchasing power of a dollar at that time and at the present time. We have no difficulty in approving the action of the trial court in sustaining the verdict against the claim of excessiveness.

We have considered all the contentions of defendant and find no ground for reversal.

Order affirmed.