## JOHN H. BERKHOLZ v. LOUIS M. BENEPE.[1]

November 3, 1922.

No. 22,972.

**Unlicensed medical graduate may qualify as expert in malpractitce suit.**
1. In an action for malpractice a person who is a graduate from a reputable medical callege may qualify as an expert, even though he is not licensed to practice as a physician or surgeon in this state.

**Verdict against defendant sustained.**
2. The court having properly received the testimony of Dr. Woolson as a medical expert, the jury were amply justified in finding negligence of defendant in the treatment of plaintiff.

**Verdict for $1,800 not excessive.**
3. The verdict, as reduced, cannot be considered excessive.

[1]Reported in 190 N. W. 800.

Action in the district court for Ramsey county to recover $15,000 for malpractice. The case was tried before Michael, J., and a jury which returned a verdict for $3,500. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial provided plaintiff consented to a reduction of the verdict to $1,800, defendant appealed. Affirmed.

*C. D. & R. D. O'Brien* and *John R. Palmer*, for appellant.

*Clayton Parks*, for respondent.

HOLT, J.

Plaintiff recovered a verdict of $3,500 against defendant, a physician and surgeon, for malpractice. A motion in the alternative for judgment notwithstanding the verdict or a new trial was made. The court denied the motion for judgment, but granted a new trial unless plaintiff consented to a reduction of the verdict to $1,800. Plaintiff filed his consent, and defendant appeals.

On December 1, 1920, plaintiff, while in the employ of Griggs, Cooper & Company, St. Paul, fractured both bones of his right leg a few inches above the ankle. He was taken to a hospital, and defendant was called by the employer, to attend him. Immediately a cast was placed on the leg by defendant, and he attended plaintiff until the early part of February, 1921, when the last cast was removed. Then, and at a previous time when the leg was bared, the patient called the doctor's attention to the lump at the place of fracture, but was assured that it would disappear inside of 2 years. Plaintiff was not satisfied, and complained to his employers who sent him to Dr. Paul Kelly. Dr. Kelly advised an immediate operation by breaking and resetting the fractures. This was done, and in about 6 months thereafter there was a serviceable leg. The evidence indicates that the fracture of the tibia was oblique. Good surgery required care in so setting and holding the bone that the broken ends would be likely to remain in apposition. Negligence in respect thereto was charged against defendant, particularly in that he took no X-ray pictures to aid in the diagnosis of the fracture or in ascertaining its condition during the curative process; that he did not make use of a fracture box; that the casts put on

did not extend above the knee, and that he did not use extension weights. There is also the general charge that defendant neglected to care for and treat plaintiff in a skilful and proper manner.

A surgeon is not to be held negligent simply because results are bad. A plaintiff in a malpractice case must show that the poor result was due to negligent or unskilful treatment. The law only requires a physician and surgeon to exercise the care and professional skill usually exercised by the ordinary member of his profession in good standing. He is only to be judged as to treatment by the standard of the medical school to which he belongs. Ordinarily the question whether the treatment was negligent cannot be determined by a jury of laymen without the aid of the opinion of medical experts. He is not responsible for the consequences of an honest mistake or error of judgment in his diagnosis or treatment where there is doubt as to what should be done in accordance with recognized authority and current good practice. These principles are so clearly set forth in previous decisions of this court that no discussion is now called for. Getchell v. Hill, 21 Minn. 464; Martin v. Courtney, 75 Minn. 255, 77 N. W. 813; Staloch v. Holm, 100 Minn. 276, 111 N. W. 264, 9 L. R. A. (N. S.) 712; McGray v. Cobb, 130 Minn. 434, 152 N. W. 262, 153 N. W. 736; Viita v. Fleming, 132 Minn. 128, 155 N. W. 1077, L. R. A. 1916D, 644, Ann. Cas. 1917E, 678; Harju v. Allen, 146 Minn. 23, 177 N. W. 1015. As we understand defendant's position, it is not claimed that the evidence is insufficient to support the finding of negligence, if the testimony of Dr. Woolson was properly admitted. We go directly to the question whether Dr. Woolson qualified as a competent expert on surgery as practiced by allopaths, the school to which defendant belongs. Dr. Woolson has practiced medicine and surgery for a number of years. He is a graduate of an osteopathic school of medicine and of surgery and has a license as an osteopath in this state. He is also a graduate of the Chicago College of Medicine and Surgery, an allopathic school, and practiced as such in the state of Illinois for 6 months after graduation, having been duly licensed so to do. He had not applied for a license to practice as an allopath in this state. We have no statute limiting medical experts to

persons licensed to practice in the state. In the absence of such statute it would seem clear that a graduate from any reputable school of medicine and surgery might qualify as an expert. Althoff v. Torrison, 140 Minn. 8, 167 N. W. 119. The extent of his practice or want of practice affects merely the weight of his testimony. Dr. Woolson, being a graduate of both schools, testified that both as to teaching and practice the diagnosis and treatment of bone fractures were identical in the two schools. There was no offer of testimony in contradiction. It also appeared that he had treated more than twice the number of cases of bone fractures than had defendant. The competency of an expert witness is left to the sound judgment and discretion of the trial court. 1 Dunnell, Minn. Dig. § 3335. No abuse of discretion appears in the instant case, and the error assigned on the admission of Dr. Woolson's testimony is not well taken.

If the jury accepted Dr. Woolson's opinion of the treatment accorded plaintiff by defendant, there can be no question but that the verdict is amply supported. We are also inclined to the view that there was enough in Dr. Kelly's testimony, considered in connection with defendant's, to raise an issue of negligent treatment for the jury. Dr. Kelly was called by plaintiff, but sedulously avoided, whenever possible, giving any opinion that might reflect upon defendant's skill or care in the treatment of this fracture. He conveyed the impression that there is in the allopathic school of surgery no recognized standard of diagnosis or treatment of fractured bones, but that it is left to the individual judgment of each practitioner. Nevertheless, he did testify that, when plaintiff came to him a day or so after the last cast of defendant's was taken off, a mere inspection and feeling of the place of fracture was enough to disclose that the leg could never be used unless the bones were rebroken and reset. Yet defendant, when plaintiff had called his attention to the same abnormal condition of the fracture, failed to diagnose the trouble or advise a remedy, but pronounced the result good.

The verdict as reduced is assailed as excessive. Defendant testified that a fracture of this sort ought to be cured in about 8 to 10 weeks. Plaintiff, because of defendant's negligence, was incapaci-

tated for an additional period of 6 months. It is true, his hospital and doctor's bills were paid and the damages for loss of time were in a measure lessened to him because of the benefits of the Workmen's Compensation Act, but the benefits so received do not go to mitigate or reduce the damages for additional lost time properly attributed to defendant's negligence. The benefits derived under the compensation act can well be placed, at least as to tort-feasors subsequent to the injury, in the same class as insurance carried by the injured party, which has been held to not mitigate the damages for which the wrongdoer is liable. Evans v. Chicago, M. & St. P. Ry. Co. 133 Minn. 293, 158 N. W. 335; State v. District Court of St. Louis County, 134 Minn. 28, 158 N. W. 791, Ann. Cas. 1918B, 635; Wentworth v. Butler, 134 Minn. 382, 159 N. W. 828. But, be that as it may, the loss of wages and the pain and suffering during the additional period required for a recovery because of defendant's failure to use proper care and skill were considerable, and we are unable to say that the verdict as now fixed is excessive.

The order is affirmed.