## HUGO G. LORENZ v. WILLIAM LERCHE.[1]

December 28, 1923.

No. 23,709.

**Recovery for malpractice to be supported by testimony of experts.**

1. In this action for malpractice in rebreaking and resetting the bones of plaintiff's leg, which had not healed satisfactorily after a fracture, where it is claimed defendant's alleged negligence resulted in two main injuries, failure of the fragments to unite and ankylosis of the ankle, recovery as to each must be supported by testimony of experts.

**What expert should be questioned about.**

2. In such a case the question put to a qualified expert should not call for his opinion as to whether the surgeon's treatment was proper or improper, but rather whether or not it was according to the customary and usual practice of the ordinarily careful and skilled surgical practioners of the same school in the community.

**When assignment of error cannot be taken.**

3. Where an objection to a question was made upon several grounds, but not the one urged on the appeal, and it appears that in the subse-

[1]Reported in 196 N. W. 564.

quent testimony of the witness similar questions were put and answered without objection, no error can be assigned on the ruling.

**Contributory negligence.**

4. The court correctly refused to submit the issue of plaintiff's contributory negligence.

**New trial granted because evidence was so slight.**

5. The size of the verdict indicates an award for all the consequences claimed in the complaint from the negligence charged, but the evidence is *held* so slight and doubtful as to the main bad result being caused by defendant's negligence that, in the interest of justice, a new trial should be had.

Action in the district court for Ramsey county to recover $36,500 for malpractice. The case was tried before Boerner, J., who at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $15,845. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed.

*Charles L. Hayes* and *Moore, Oppenheimer, Peterson & Dickson,* for appellant.

*T. P. McNamara* and *William H. Seward,* for respondent.

HOLT, J.

Both the tibia and fibula of plaintiff's right leg were fractured at the junction of the lower and middle thirds. A doctor near his home in Wisconsin set the bones and treated him. The ends of the bones could not be kept in place, and union was difficult and slow. The result was not satisfactory. About a year later, plaintiff, having removed to St. Paul, consulted defendant, a surgeon, who advised an operation rebreaking the fracture and resetting the same. The operation was had in May, 1921. It was not successful. For a long time plaintiff suffered from ulcers on the instep and the heel, the ankle has become rigid, and bony union has not yet formed at the fracture. This action for malpractice followed with a verdict for $15,845. Defendant appeals from the order denying his motion in the alternative for judgment or a new trial.

This is a case where a jury could not determine the issue of defendant's negligence without testimony from medical experts. The main item upon which to base damages is the failure of the fractured bones to form a bony union. The next of substance, the ankylosis of the ankle joint. Whether this was caused by defendant's unskilful or negligent operation or treatment must necessarily rest upon competent medical testimony. Bad results alone will not justify an inference of improper treatment. The skill and care of the most competent and painstaking surgeon often fails to cure or relieve. The inherent recuperative or healing powers of patients differ greatly. And even in the same person such powers may vary from time to time. Therefore, when the question is to be determined whether a physician or surgeon has negligently or unskilfully treated or operated a patient, the standard to be given the jury is the usual and customary practice of the ordinarily skilled and careful practitioner in the community. Where the doctor has come up to that standard, the law holds him free from damage claims, even though it appears that errors of judgment in diagnosis or treatment have occurred. The question for the jury is not what a certain practitioner may have done in a particular case. Hence, special care should be taken that verdicts in malpractice cases are not made to rest upon a generally expressed opinion that a course of treatment was improper, unless there is evidence reasonably disclosing some specific acts or omissions which, under the standard mentioned, constitute negligence or unskilfulness, and further that such negligence or unskilfulness, in the opinion of the medical experts, caused the suffering and bad results for which damages are sought and allowed. The law regarding a physician's or surgeon's responsibilities is adequately stated in the cases cited in Berkholz v. Benepe, 153 Minn. 335, 190 N. W. 800.

There is but one assignment of error urged in relation to the admission of testimony, namely, that Dr. Woolson, over defendant's objection, was permitted to express his opinion that, taking plaintiff's evidence as true, defendant's treatment was improper. Several reasons may be given why the ruling, even if erroneous, should not in and of itself cause a new trial. The objection did not point

out the ground now urged, namely, that the question called for the witness' individual opinion as to the treatment given, instead of whether the treatment conformed to that usually given by the ordinarily careful and skilled practitioner in that community. Spain v. Burch, 169 Mo. App. 94, 154 N. W. 172; Wood v. Vroman, 215 Mich. 449, 184 N. W. 520. The objection was: "That is objected to as incompetent, irrelevant and immaterial. The witness isn't qualified to testify as an expert as to the care and treatment rendered by the defendant in this state." Evidently, counsel had in mind that the witness had not obtained a license to practice in this state except as an osteopath and therefore could not testify as an expert. After this ruling, many like questions calling for the witness' opinion as to the operation and treatment were asked and answered in the same manner without objection. And in the examination of his own experts defendant followed, as a rule, the same course as did plaintiff. Of course, when a medical expert is asked to state what effect a cause may produce, or what may result from a certain course of treatment, it ordinarily calls for an opinion based upon his own investigation, study and experience. Under the conditions stated, there was no reversible error in the ruling discussed.

There was no evidence of contributory negligence, and the court rightly refused to give a requested instruction upon such a defense. Other requests to charge were sufficiently covered insofar as expressing pertinent legal principles.

That the remarks of counsel for plaintiff in addressing the jury, to which exception was taken, were improper is clear. For that misconduct alone we might hesitate to grant a new trial.

But, although none of the assignments of error relating to the conduct of the trial or to the alleged newly discovered evidence gives good ground for a reversal, an examination of the record, having in mind the law as stated in the cases cited in Berkholz v. Benepe, supra, has engendered such serious misgivings concerning the justice of the verdict that a new trial is deemed necessary.

Without undue recital or discussion of the evidence, it may suffice to point out the main weakness in plaintiff's case. He had only one medical expert, who based his opinion wholly upon the state-

ments of plaintiff and his wife as to the appearance of the toes which protruded from the cast, their testimony of the pain and the bad results. The experience of this medical expert was exceedingly limited, although he could qualify as such. He is the same expert whose qualification was unsuccessfully challenged in Berkholz v. Benepe, supra. He had no license to practice in this state except as an osteopath, and, although he had had a license to practice as an allopath in Illinois, he had been engaged therein as such for only five months. He had had but two or three cases involving breaking and resetting fractured bones, and none like the present case. He had never attempted an operation by bone inlay, such as defendant performed on the tibia, and which the six medical experts called by the defense testified to be proper and customary practice. When the testimony of plaintiff's sole expert is analyzed it is disclosed that he attributes the ulcers, the ankylosis, and the failure of the fractures to knit to defendant's neglect to open the cast when advised by the patient's complaints of severe pain and by the discoloration and coldness of the toes that circulation in some parts of the foot was impeded or stopped. Here again the six experts for the defense differ from the opinion of plaintiff's expert. These experts produced by defendant were surgeons of long experience and high professional standing. They all testify positively that pressure of the flesh below the fracture and resultant ulcers or sloughing would not prevent or retard the formation of a bony union at the fracture. Under this condition of the evidence the jury were not justified in finding that failure of the bones to knit was due to either the manner of the operation or to neglect to relieve from pressure. It may also be noticed that defendant's experts expressed the opinion that the testimony of plaintiff and his wife could not be true as to the appearance of the toes, for, if so, the toes would have been utterly destroyed.

Although the complaint charged no professional misconduct in advising the operation, defendant offered evidence that the advice was proper. But such an issue was not submitted to the jury, and the verdict cannot be defended as to amount or propriety on the

ground that it rightfully includes damages for negligently advising an operation when there was a serviceable leg.

Whether the ulcers and ankylosis resulted from defendant's failure to heed the alleged complaints of plaintiff as to pain, and relieve it by cutting windows in or entirely removing the cast, presents a somewhat different question. All the medical experts agree that if plaintiff localized severe pain, and the exposed toes indicated coldness and change of color to blue or black, good practice required speedy action on the part of the defendant by relieving the pressure, otherwise gangrene or ulceration was sure to follow. On this proposition plaintiff's proof made a question for the jury, although unsatisfactory as intimated above. If the story of plaintiff and his wife were true, that he screamed with pain and that for days his exposed toes were blue or black, corroboration was readily at hand, for plaintiff was in a hospital ward, and nurses and internes were in attendance day and night. None of these were called by him.

As an example that in surgery a patient's recuperative or inherent healing power varies greatly from time to time may be cited the case of Snearly v. McCarthy, 180 Iowa, 81, 161 N. W. 108, where, after a setting and resetting of a fracture of the femur, there was slipping of the ends and no union, the patient was then taken to the famous surgeon, John B. Murphy of Chicago, who refractured and reset the bone three times before it finally knit. The patient seemed incapable of producing the material necessary to form a bony union until after the last resetting of the fracture. And still the two first operations must have been as skilfully and carefully made as could be done by one in the very front rank of the profession.

The record suggests no inattention, but rather that defendant did his best. He and his assistant attended plaintiff daily for weeks. His endeavors should not be penalized in this large verdict, unless there is substantial evidence of negligence which caused all that is complained of in the complaint. We feel there was not.

The order is reversed and a new trial granted.