## ELMER E. KORMAN v. HENRY O. HAGEN.[1]

December 24, 1925.

No. 24,831.

**Negligence of physician in making forcible delivery of child.**

In this case to recover damages for the benefit of plaintiff's child, whose leg was fractured and arm paralyzed by the manual force exerted by defendant, the attending physician, in the alleged negligent and premature delivery thereof, it is *held*:

(1) There was testimony contradicting the findings of defendant as to the necessity of making a forcible delivery which carried the issue of his negligence to the jury.

(2) The defendant, was within 48 hours of the birth of the child, dismissed, and other doctors called to take charge of it. The court charged the jury that defendant could not be held responsible for the augmented damages caused by the subsequent negligent treatment of the child's injuries.

(3) Under the evidence and the law thus given, which the jury were bound to follow, no large sum could be assessed against defendant for the arm injury, for it appears that, although the doctor who superseded defendant discovered that injury in time likely to effect a cure by simple treatment, none was given.

(4) The evidence not justifying a large sum for the arm injury, the verdict must be *held* so excessive as to indicate passion and prejudice on the part of the jury.

See Physicians & Surgeons, 30 Cyc. pp. 1588, 1590.

Action in the district court for Waseca county to recover for malpractice. The case was tried before Senn, J., and a jury which returned a verdict for $8,000. Defendant appealed from the judgment. Reversed on condition.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly* and *George W. Peterson,* for appellant.

*Gallagher, Madden & Gallagher* and *Moonan & Moonan,* for respondent.

[1]Reported in 206 N. W. 650.

HOLT, J.

The appeal is from a judgment against defendant, a physician, for alleged malpractice in a confinement case, resulting in serious and permanent injuries to the child in whose behalf the action was brought by the father.

The verdict, the basis of the judgment, is attacked as unsupported by medical testimony and hence contrary to law. Defendant, a graduate of a medical school of high repute and a practitioner of his profession for about 20 years in the village and vicinity of New Richland, was called at 2 o'clock a. m. May 9, 1921, to attend Mrs. Korman in a protracted case of labor, she then having been in intermittent labor pains for more than 48 hours. It was Mrs. Korman's first confinement. Upon examination the doctor ascertained that there was a breech presentation of the child. This made the delivery more difficult and hazardous than usual. But the consensus of the medical testimony is that in such a case a forcible delivery should be resorted to only when necessary to save the life of the child or the mother, good practice of the attending physician being watchful waiting. According to defendant he did so, and interfered only when, about noon, he found, from the faintness and slowness of the foetal heart beats, that forcible delivery must at once be made to save the child. In so doing, the force necessary to use broke the femur of the left leg, to him an anticipated but unavoidable result. It appears that the nerves controlling the muscles of the right arm were lacerated, producing partial paralysis of the arm. The femur was set by defendant, but the laceration of the nerves was not discovered by him. He also attended to the leg on the tenth and eleventh. Then his services were dispensed with and other doctors were employed. They almost immediately discovered the injury to the arm, known as Erb's paralysis, but did not treat it in any form. The fractured femur was given attention. The result is that the leg is now about an inch shorter than the other, and the arm has a very limited use. The injuries are permanent.

The contention is correct that, if the findings of defendant as to the conditions confronting him were true, the medical testimony

does not justify a verdict based upon the ground that there was a premature forcible delivery. But if there be facts upon which the jury could predicate a finding that defendant applied force when he knew, or, as a physician, should have known that the life of neither child nor mother was in immediate danger, then the evidence from the medical experts supports a recovery in some amount, for there is no doubt that the force applied fractured the femur. An attentive examination of the record convinces us that there is testimony of such facts which this court cannot reject or ignore, particularly in respect to the fracture of the leg.

Mr. Korman's mother, who had given birth to 12 children and has assisted at many confinements, testified, as did also Mr. Korman, that defendant, just before receiving a telephone call from another woman who had engaged his services that she was beginning to have labor pains, had announced that there was nothing to do except to watch and wait, but, on coming back from the telephone, he, without any examination for foetal heartbeats by stethoscope or otherwise, proceeded at once to deliver the child with force. This the patient also testified to. She also claimed that she heard the femur break. This he denies, claiming that he administered an anesthetic to her and that she was completely unconscious before any force whatever was applied. The testimony is also quite contradictory between defendant and the witnesses named as to the condition of the child when born, such condition and the length of time and effort required for its resuscitation indicating whether or not its life had been in jeopardy. Admittedly the use of force by defendant caused the fracture of the leg and the negligence, if any, was in its premature use rather than unskilfulness in its application. Defendant himself testified that the practice of obstetricians required that there be no operative interference with a delivery unless there was indication of danger to the life of the child or mother. He admits that the life of the mother was not in danger, but claims that he ascertained by the use of the stethoscope that the life of the child was. The testimony of the three other persons present was to the contrary, as already stated.

We appreciate the unenviable position in which a physician so often is placed. Here was the agony of the patient, the insistence of her husband and her mother-in-law that defendant do something for her relief, and the unusual and difficult position in which the child was presented, all of which, no doubt, taxed to the utmost both the judgment and skill of an attending physician. In such a situation the doctor ought not to be held for a mere error of judgment nor for not selecting the best of several approved methods of procedure. And the law so declares. We also realize that when such judgment and skill are to be weighed by a jury in the presence of a small child who must go through life deformed and handicapped through the physician's alleged negligence and then, as here, by a coincidence of circumstances beyond his control, an opportunity is given counsel to adroitly use a call to another case as a motive for a forced premature delivery, the physician's best efforts will receive scant consideration. While we may consider this alleged motive flimsy and unwarranted, and the testimony of plaintiff's witnesses unreliable in the state of mind they were in when matters occurred as compared with the time they came to coolly calculate what incidents may be stated that will tell against defendant, nevertheless, it is for the triers of fact to determine the weight and truth of all the testimony. We must hold that there is a dispute as to whether or not defendant proceeded to deliver with force when there were no manifestations of danger to the life of the child, or without ascertaining whether or not there was such danger. We do not think defendant could be held legally liable for either the fracture or the nerve injury, if delivery by force was necessary, even though a medical authority asserts that if the bones of a leg of the foetus, in such a presentation as this, are fractured in getting it down, a lack of skill in the art of delivery is indicated. The fact is, that fractures do occur in the case of forced deliveries by the ordinarily skilled and careful practitioner.

Complaint is made of portions of the charge and of the refusal to give requested instructions. The general criticism is offered that the court, at the beginning, spoke of and defined negligence as applied in the ordinary actions of damages for personal injuries and

not in an action such as this, involving negligence in the rendition of professional services. We are unable to see how the preliminary statements as to what constitutes negligence and the presumption of freedom from negligence could have confused the jury to defendant's prejudice, because they always were coupled with the proviso "under given circumstances." Here the given circumstance was that of a physician in the performance of the duties of his profession. And when the court finally came to the rule by which to determine whether or not defendant was negligent or careless as a physician in delivering this child, the charge was very full and correct, except that in one sentence there was the improper use of the word "all" instead of the word "ordinary." That this was a mere inadvertent use of a wrong word is so apparent from what immediately followed that it may not be doubted that the jury got clearly and definitely the accurate test by which to determine defendant's professional conduct, as approved in our cases from that of Getchell v. Hill, 21 Minn. 464, to Lorenz v. Lerche, 157 Minn. 437, 196 N. W. 564.

The jury were instructed in substantially the language of defendant's requests, that damages could not be awarded for any shortening of the leg resulting from an interference with defendant's treatment, whereby the apposition of the bones adjusted by him was disturbed, nor for the disability of the arm resulting from the failure of others to properly treat Erb's paralysis. This may be more favorable to defendant than the law permits, although Carpenter v. Blake, 75 N. Y. 12, seems to justify the charge. That was a case where the doctor sued had been supplanted by another doctor, and the court held that, while the malpractice of the one last engaged did not defeat a recovery against the one sued, the consequences of such subsequent malpractice were to be considered in mitigation or reduction of the damages to be awarded for the original malpractice. However, the correctness of that part of the charge is not presented in this appeal and we do not pass thereon.

The damages are claimed to be so excessive as to denote that passion and prejudice moved the jury. Under the evidence and the

charge, we think, damages might properly be assessed against defendant for all the present defects in the leg, for there is no testimony that proper skill and care were not given the fracture by the doctors who succeeded defendant.

As to the paralysis of the arm the evidence is very unsatisfactory that defendant was at all to blame for it. Pressure in severe cases of labor, and this was a severe case, might account for it. Excessive force in pulling on the body in order to extricate the head might also produce it. Defendant admitted that he pulled and had a hard time to get the head through because of its extraordinary size. There is no medical expert denying this fact or indicating that the head could have been extracted in any other way less apt to lacerate the nerves. But, apart from the meagerness of proof showing the arm injury to be the result of defendant's professional negligence, we have this situation: Dr. Brandenburg discovered the injury to the arm on the eleventh or twelfth of May, or virtually as soon as defendant was dismissed, but neither he, nor any of the doctors associated with him, treated the same for the purpose of effecting a cure. It also appears that a complete recovery is very likely, if treatment is had soon after such an injury is received. The charge alluded to, which directed the jury to exclude the injury to the arm caused by the malpractice of the physicians who were employed to treat the child after defendant was dismissed, whether right or wrong, the jury were bound to apply and base the verdict on. Authorities so hold. Smith v. Pearson, 44 Minn. 397, 46 N. W. 849; Green v. St. P. M. & M. Ry. Co. 55 Minn. 192, 56 N. W. 752; Quinn v. St. P. B. & M. Co. 128 Minn. 270, 150 N. W. 919; Kruta v. Lough, 131 Minn. 13, 154 N. W. 514. With the evidence in the condition mentioned as to the failure to treat at all a known injury amenable to simple treatment which would likely have effected a cure, the jury, upon the charge given, were not warranted in awarding any great sum for the paralyzed arm. The record indicates that the arm injury will be far the greater handicap to the child in its struggle for a livelihood than the shortened leg. Nor could a very large amount be awarded for the shortening of the leg, to which

the rest of the frame of the body will no doubt in a great measure adjust itself before the child reaches maturity.

We therefore think the verdict rendered is excessive viewed in the light of the instructions and should not stand. Two trials have been had and it would be for the best interests of the parties if there be an end to the controversy. This can be accomplished if plaintiff is willing to accept such a verdict as under the instructions of the court the evidence would seem to warrant. Hence the judgment is reversed and a new trial is granted, unless plaintiff, within ten days after the going down of the remittitur, file in the court below a consent to a reduction of the verdict to the sum of four thousand dollars. If such consent is so filed judgment may be entered upon the verdict as reduced.

Judgment reversed and the cause remanded with direction to grant a new trial, unless plaintiff consents to a reduction of the verdict as above stated.

WILSON, C. J. (concurring.)

The rule is well settled that where a person is injured by the negligence of another and he is not himself negligent in the selection of a doctor, the wrongdoer is liable for all the proximate results of his own negligence, although the consequences of the injury would have been less serious than they proved to be if the subsequent attending doctor had not been guilty of negligence. Fields v. Mankato Elec. Tr. Co. 116 Minn. 218, 133 N. W. 577; Goss v. Goss, 102 Minn. 346, 113 N. W. 690; Hunt v. Boston Terminal Co. 212 Mass. 99, 98 N. E. 786, 48 L. R. A. (N. S.) 116, and note; 8 A. L. R. 506, note. This rule is applicable to a surgeon who is guilty of negligence.