# ANDREW A. JOHNSON v. H. W. ARNDT.[1]

May 27, 1932.

No. 28,931.

*J. D. Sullivan* and *Henry N. Jenson,* for appellant.

*Murphy, Johanson, Winter & Nelson* and *A. O. Sletvold,* for respondent.

[1]Reported in 243 N. W. 67.

OLSEN, J.

Plaintiff as administrator sued to recover damages for the death of Frieda E. Johnson, claimed to have been caused by defendant's negligence. The jury found a verdict in favor of the plaintiff. Defendant had moved for a directed verdict and thereafter moved for judgment notwithstanding the verdict. Each motion was denied. Judgment was then entered on the verdict, and defendant appealed from the judgment.

The appeal presents the one question of whether there is evidence sufficient to sustain the verdict.

Defendant is a physician and surgeon, practicing his profession at Frazee in this state. He has practiced there for some 11 years and conducts a small hospital in connection with his practice. He had been in active practice for some 18 years and was in good standing in his profession. He testified that he had performed more than 1,500 operations for the removal of tonsils without any deaths resulting therefrom up to the time of the operation here in question.

A few days before April 1, 1931, the decedent, Frieda Johnson, the plaintiff's wife, consulted the defendant as a patient. According to defendant's testimony, she was examined by him and found to be in normal, good condition physically, except for a minor lump or swelling near one knee, which defendant diagnosed as coming from some infection of her tonsils. Her heart, lungs, and other organs were found in normal condition and her general condition good. Defendant advised her to have her tonsils removed. On April 1, 1931, she came to defendant's hospital for that purpose. Defendant then performed the operation of removing her tonsils. He used a local anaesthetic, which was injected into the tissues surrounding the tonsils to lessen the pain from the operation. He testified that he used an anaesthetic known as nupercaine; that he obtained this drug from a firm of well-known chemists and manufacturers of drugs in New York City, but that it was an imported preparation, not manufactured by them; that it came in liquid form in sealed glass tubes or ampules, ready for use; that he had used

this same anaesthetic in other cases but only since about July, 1930; that he used in this operation only the proper amount of the anaesthetic and no more; that the patient died within a very short time after the operation; that there was no mishap or anything out of the ordinary in the operation and no excessive bleeding then or afterwards. Defendant gave it as his opinion that some embolism or blood clot formed somewhere and clogged the blood circulation and caused the patient's death.

■ The negligence claimed by the plaintiff was that the defendant negligently injected into the throat of the decedent an excessive and destructive quantity of nupercaine and other poisons, drugs, and substances and thereby caused her death. There were some other charges of negligence stated in the complaint, but no other claim is now urged; and the court charged the jury that all other claims of negligence were withdrawn from their consideration. No exceptions to the charge were taken, and no errors therein are now assigned or claimed.

Where, as here, the jury has found a verdict in plaintiff's favor, we are required to consider the evidence in the most favorable light for the plaintiff, but in so doing we cannot go beyond the evidence presented and the reasonable inferences to be drawn therefrom. Plaintiff presented no physicians or surgeons as witnesses, no medical evidence, expert or otherwise. The defendant testified directly and positively as to the care used by him in giving the anaesthetic and performing the operation and that there was no negligence or want of care. Plaintiff meets this testimony by no direct or opinion evidence, but by pointing out certain circumstances and certain statements claimed to have been made to others by defendant and the nurse present at the operation. Probably the most important circumstance shown is that another patient, Mrs. Eveslage, a young married woman, operated on for the removal of her tonsils, either immediately before or immediately after the operation on Mrs. Johnson, died while in the operator's chair. The same anaesthetic was used in the same quantity and manner in each operation. The court charged the jury:

"The fact that Mrs. Eveslage died that day after an operation is no evidence of negligence on the part of anyone." That evidence "has been received for what light it may shed, if any, on the situation that existed at the time the defendant administered the anaesthetic to the deceased, Frieda Johnson."

The medical certificates of death, signed by defendant and furnished to and filed by the undertaker, as required by statute, gave the cause of Mrs. Johnson's death as "heart failure," contributing cause, "myocarditis"; and the cause of Mrs. Eveslage's death as "acute dilation of the heart," contributing cause, "myocarditis." In his testimony the defendant gave it as his opinion that Mrs. Eveslage's death was caused by an "idiosyncrasy" for the anaesthetic, a supersensitiveness to this anaesthetic, so that she could not withstand even a small or proper amount thereof; that this condition could not be ascertained by any prior examination of her, however careful or complete. A case of this kind was involved in Taylor v. New York L. Ins. Co. 176 Minn. 171, 222 N. W. 912, 60 A. L. R. 959.

Other testimony and circumstances pointed out are that defendant made no examination of any kind of the bodies of these patients after their death; that after examining the containers from which the anaesthetic was taken, which were labeled, showing the ingredients thereof, he threw them away; that he stated to certain witnesses that he did not know what caused the death of Mrs. Johnson; that he stated at another time that it was like a game of cards and he played the wrong card. There is dispute in the evidence as to some of these circumstances and statements, but the jury could well find them to be as we have given them.

These facts and circumstances, which the jury could find proved, might justify some inference that something went wrong in these operations. The jury might disbelieve and disregard the testimony of defendant as to the care used and his opinion as to the cause of these deaths. But, leaving out defendant's testimony as to those vital matters, we have nothing left from which to find or infer that death was caused by the use of an excessive or improper amount of anaesthetic or by injection of a fatal poison. That was the only

issue submitted to the jury, and the verdict must stand or fall on the sufficiency of the evidence to sustain it on that ground. The fact that the patient died from or immediately after an operation is not sufficient, under our decisions, to charge the surgeon with negligence. Staloch v. Holm, 100 Minn. 276, 111 N. W. 264, 9 L.R.A.(N.S.) 712; McGray v. Cobb, 130 Minn. 434, 152 N. W. 262, 153 N. W. 736; Berkholz v. Benepe, 153 Minn. 335, 190 N. W. 800; Lorenz v. Lerche, 157 Minn. 437, 196 N. W. 564. Negligence is not presumed from the result. Nelson v. Dahl, 174 Minn. 574, 219 N. W. 941. We find the evidence insufficient to sustain the verdict on the issue submitted to the jury.

■ Plaintiff urges that the rule of res ipsa loquitur should apply. The cases above cited sufficiently show that the rule does not apply to a malpractice case of this kind. We have cases involving the negligence of physicians and surgeons where the rule has been applied to a limited extent. But in each of these cases there was direct evidence as to the cause of the injury.

In Moratzky v. Wirth, 67 Minn. 46, 69 N. W. 480, defendant, called to treat the plaintiff in childbirth, failed to remove all of the afterbirth. Part of it remained and putrified, causing blood poisoning. There was no other evidence of negligence, but the court held that from the facts and circumstances shown the jury could reasonably infer that defendant was negligent in failing to remove all of the placenta.

In Jones v. Tri-State T. & T. Co. 118 Minn. 217, 136 N. W. 741, 40 L.R.A.(N.S.) 485, the plaintiff was seriously burned and injured in the taking of an X-ray picture, and the court held that, such injury not being one likely to result if proper care were used in operating the X-ray apparatus, the jury might infer negligence in its operation.

In Vergeldt v. Hartzell (C. C. A.) 1 F. (2d) 633, cited by plaintiff, the defendant, a dentist, was polishing an inlay in one of plaintiff's teeth. He was using a power-driven, rapidly revolving drill or tool, to which the polishing disc was attached. He permitted the drill to slip from the inlay, penetrate the floor of plaintiff's mouth, and

lacerate and injure her tongue and mouth. There was no other evidence of negligence, but the court held that from the injury and the manner in which it was inflicted and the circumstances shown the jury could infer that defendant was negligent.

In our present case there is no evidence that defendant injected into the decedent's throat an excessive amount of anaesthetic or any other poison. The jury is asked to be permitted to infer that defendant did something which he is not shown to have done, and then to base on that inference the further inference that what he is so inferred to have done caused decedent to die. Inferences may not safely be carried that far. Had there been evidence to show that defendant used an excessive amount of anaesthetic or other dangerous poison, the jury could well have found that he was negligent and have further inferred and found that his negligence caused the death. But the foundation for the finding of negligence is here wanting.

■ We do not hold that it is necessary for plaintiff to have expert testimony to sustain his claim of negligence in a malpractice case if there is other evidence sufficient to prove negligence and causal connection between such negligence and the injury complained of. In many cases, however, the situation may be such that expert testimony is necessary.

■ Some claim is made that defendant may have used novocaine instead of nupercaine as an anaesthetic. But, as novocaine is less toxic than nupercaine, that would not aid the plaintiff.

The fact that the situation shown appeals to the sympathy of the court and jury does not permit us to depart from established rules of law or to supply lacking evidence.

There is some probability that evidence may be available to throw further light on the case, and we do not grant judgment for defendant.

Judgment reversed.

STONE, J. (dissenting).

It is a challenging circumstance that each of the two patients, operated on in succession, died suddenly and immediately after her

operation. I cannot escape the conclusion that the jury could have concluded, reasonably, that Mrs. Eveslage was operated on first and that the fatal result was known to defendant before he proceeded to operate on Mrs. Johnson. With that as a premise, the conclusion might have been drawn that it was negligence for the doctor, without even the precaution of investigation into the cause of the first death, to use on the second patient the same anaesthetic which apparently was fatal to the first.

DIBELL, J. (concurring).

I concur in the result of the majority opinion. It may be, as suggested in Mr. Justice Stone's dissent, that a jury might find that the defendant should not have proceeded with the operation upon the plaintiff with knowledge, if such was the fact, of the unsuccessful result of the use of the same anaesthetic upon another patient immediately before. There was not a trial of such an issue. It cannot now be suggested to support the verdict which but for it is not sustained. It should be open for consideration on a new trial when, as suggested in the majority opinion, there may be useful additional evidence.