SYBIL YATES v. J. W. GAMBLE AND ANOTHER.[1]

July 24, 1936.

No. 30,806.

[1]Reported in 268 N. W. 670.

8

*Meighen, Knudson & Sturtz,* for appellant.

*Ernest E. Watson, Silas S. Larson,* and *J. O. Peterson,* for respondents.

I. M. OLSEN, JUSTICE.

Chrystal J. Yates brought this action to recover damages alleged to have been caused to her by malpractice on the part of defendants,

J. W. Gamble and Paul Gamble, physicians and surgeons, in performing surgical operations on her body and in treating her in connection therewith. There was a directed verdict for defendants. Chrystal J. Yates died on September 10, 1935, after the trial and pending her motion for a new trial. Thereafter Sybil Yates, as special administratrix of decedent's estate, was substituted as plaintiff. The motion for a new trial was denied, and the appeal is from the order denying that motion. For convenience we refer hereinafter to Chrystal J. Yates as plaintiff unless otherwise indicated.

The motion for a new trial was based on what, in substance, constitutes two grounds: First, that the evidence made the issue of malpractice a question of fact for the jury, and the court erred in not submitting that issue to the jury and in directing a verdict; second, that the court erred in a number of rulings, in sustaining objections to questions asked of certain witnesses, and in striking out certain answers to questions.

Plaintiff was a young woman 25 years of age at the time of the trial. She was a trained nurse, having taken a three-year training course in the Naeve Hospital at Albert Lea and having become a registered nurse in 1932. She and the defendants were residents of Albert Lea, Minnesota. Plaintiff had gallstone trouble, the first attack being in 1931, a second in July, 1932, and a third late in December of that year. Defendants had been and were plaintiff's attending physicians during these attacks. X-ray pictures taken in August, 1932, and January, 1933, showed gallstones in the gall bladder as the cause of these attacks. An operation for the removal of the gall bladder was agreed upon and was performed by the defendants at the Naeve Hospital on January 6, 1933. Up to the time of this operation plaintiff's health, aside from the attacks mentioned and the temporary illnesses caused thereby, was good. During the two attacks prior to December, 1932, plaintiff vomited a number of times, and the vomit contained some bile. After the first operation bile continued to seep out through the drainage tubes inserted in the operative opening, and after these tubes were

removed bile continued to seep out through the wound and vomiting continued. There was some improvement. Plaintiff returned to her home, but on January 25 became seriously ill and showed symptoms of an obstruction in the bowels. She returned to the hospital. A second operation was performed by defendants on January 26. Numerous adhesions were found, one of which caused a stricture and obstruction in the bowel where it connected with the stomach. The adhesions found were removed. Plaintiff's condition did not greatly improve, and on February 3 she was taken to the Mayo Clinic in Rochester and placed in St. Mary's Hospital, where she was treated by the doctors of that clinic. There was some improvement, and plaintiff returned to her home in Albert Lea on February 23. She continued ailing, with more or less vomiting and nausea, and returned to the hospital in Rochester on April 29. She was there operated on by Dr. Judd of the Mayo Clinic on May 13. She improved after that operation and returned home July 1. There were some blood transfusions at Rochester. There was also an operation for drainage of an abscess in the abdominal wall in June, before she returned home. She made a number of trips to Rochester after July 1, and an operation for drainage of a liver abscess was performed by Dr. Judd on December 27. She continued after that to make occasional trips to Rochester up to March, 1935. She described her condition after July 1, 1933, as "fairly good," with occasional pain, nausea, and vomiting.

Plaintiff's counsel state, at the outset of their brief:

"Appellant's central contention is that in a routine gall bladder operation, wholly without complications, the surgeon, contrary to good surgery and without necessity, opened a bile duct and failed to repair or otherwise care for the opening, resulting in large quantities of bile escaping through the wall of the duct, and being the proximate cause of inflammation, infection, stricture of the common duct, and troubles which wrecked the patient's life."

Plaintiff's theory, briefly stated, as we gather it, appears to be that defendant Paul Gamble, at the first operation, inserted a probe through the wall of the common bile duct and left an opening in

that duct through which bile escaped into the abdominal cavity; that he failed to close or repair said opening; that this caused irritation throughout the biliary tract and caused the adhesions found at the second operation; that after the first operation infection from some source developed in the biliary tract and caused the subsequent illness and suffering of the plaintiff.

The evidence relied upon to show that defendant Paul Gamble inserted a probe in the common duct is that of plaintiff and one of her sisters, who testified, in substance, that some time after plaintiff had made her first trip to Rochester and been there treated, in a conversation between plaintiff and Dr. Paul Gamble, at which the sister was present, plaintiff inquired of the doctor whether he thought there was any obstruction in the common duct and he stated that he had taken a probe and probed as far as he could to see if there were any stones or obstruction and that the duct was clear. As the verdict here was directed on motion at the close of plaintiff's evidence, after defendants rested for the purpose of moving for such verdict, there is no evidence on this question on the part of the defendants except that Paul Gamble was called by plaintiff for cross-examination under the statute and testified that he made no such statement; that he did not insert any probe in this duct but did palpate the duct with his fingers and found no stones or obstructions therein. The testimony of Dr. J. W. Gamble is not in the printed record, except a few questions and answers not relating to this subject. It is stated in the printed record that what is omitted therefrom is corroborative of the testimony of Dr. Paul Gamble. Without searching through the typewritten transcript, we assume he corroborates the testimony of Dr. Paul Gamble that no probe was inserted in the common duct.

This evidence of the plaintiff and her sister, viewed in the light of plaintiff's other testimony as to her symptoms and condition for some years prior to and after the operation of January 6, 1933, and other facts shown, deserve some consideration. Assuming that the statement was made by Dr. Paul Gamble, it does not state when or in what manner the probe was inserted. Two medical experts were called for the plaintiff, Dr. Snell of the Mayo Clinic and Dr. Dakin

of St. Joseph's Mercy Hospital of Mason City, Iowa. Dr. Snell was asked as to the effect of applying a steel probe to the common duct so as to traumatize it. His answer was that then you would have an immediate drainage of bile which would persist until it was corrected. But he qualified his answer later by testifying that as far as his experience went the trauma was principally that of infection; that it was infective trauma and not mechanical trauma; that anything short of a crushing or tearing trauma he would not count as mechanical trauma because it would have no influence. Dr. Dakin testified in effect that, assuming that Dr. Gamble had palpated the common duct and found no obstruction therein, it would not be good surgical practice to insert a probe through the wall of the common duct and probe it, the objection to so doing being that it was unnecessary and would cause damage to the duct and necessitate drainage, and unnecessarily complicate the operation; that he would not expect the opening to close of its own accord immediately. It may be noted that a probe, if used, would be a slender instrument with a diameter about the same as the lead in an ordinary pencil. Irrespective of any medical testimony, we may safely assume, as a matter of common knowledge, that nature would promptly set up a healing process to close the slight wound in the wall of the duct. So Dr. Dakin very properly qualified his answer by saying the opening would not close immediately.

■ Concededly defendants were qualified and experienced physicians and surgeons in good standing and possessed at least the average skill of physicians and surgeons practicing in their community. That does not excuse them if they failed to exercise the degree of skill and care required. A physician and surgeon is not an insurer of a cure or good result of his treatment or operation. He is only required to possess the skill and learning possessed by the average member of his school of the profession in good standing in his locality, and to apply that skill and learning with due care. Other definitions are to the same effect. Clark v. George, 148 Minn. 52, 180 N. W. 1011; Berkholz v. Benepe, 153 Minn. 335, 190 N. W. 800; Nelson v. Dahl, 174 Minn. 574, 219 N. W. 941. The case of Quickstad v. Tavenner, 196 Minn. 125, 264 N. W. 436, is well in

point here. It covers the question of the care, skill, diligence, and learning required to be exercised by a surgeon and the effect given to admissions made by him. Notwithstanding such admissions, the evidence in that case was held not to make a case for the jury, and a directed verdict was sustained.

■ Neither of plaintiff's medical experts gave any opinion that a puncture or opening was made in the common duct in the operation on January 6, 1933, or at any time, by the defendants. They were asked to assume that there was such a puncture made, and, as already stated, gave opinions that this would cause some escape of bile into the abdominal cavity for a time. Neither expert gave any opinion as to whether the ailment and complications of the plaintiff, after January 6, 1933, resulted from an operative puncture of the wall of the common duct or from failure of the defendants to exercise proper care and skill as surgeons. Dr. Snell gave his opinion that her condition was due to infection of the biliary tract and that such conditions result "time and again" in cases where the surgeon has exercised all due care and skill; that such condition as here shown is not indicative of any lack of skill or want of care on the part of the surgeon. He further testified that plaintiff's preoperative history as to her condition, as shown by the evidence, was very similar as to symptoms of infection to her condition after the operation. Dr. Dakin also admits that plaintiff's condition, as shown by the evidence, indicated gall bladder disease and possible infection in the biliary tract prior to January 6, 1933, the date of the first operation, and that there was some chronic inflammation in the gall bladder, set up by some irritation, commencing as early as 1931. The testimony of the two experts, and the hospital and operation records in evidence, quite clearly show that plaintiff's condition from and after January 6, 1933, was caused by infection from some source. Both experts agree that a gall bladder operation is serious and may, and sometimes does, result in complications or death in spite of the exercise of the best skill and care on the part of the surgeon. Having, as here, a diseased and possibly infected area before operation, the condition after the operation of January 6 seems reasonably explained. It is of some significance that

14

the same kind of vomiting was suffered by plaintiff on two occasions prior to that operation as that which occurred thereafter, except that it was more severe and continuous after the operation. Bile ejected by vomiting would, we take it, necessarily have to come from the stomach or from the upper part of the intestines through the stomach. If, as claimed on the part of the plaintiff, an opening was made in the common duct so that "large quantities" of bile escaped into the abdominal cavity, there would apparently be less bile discharged into the intestines and less to be ejected by vomiting instead of more. The evidence is insufficient to sustain a finding that the infection was caused by any failure of defendants to exercise the care and skill required of them under the rule hereinbefore stated.

Dr. Judd, who performed the several operations at Rochester, was not called as a witness. All that appears as to what he found are the hospital and operation records there kept.

■ In negligence cases, and especially in malpractice cases, proof of causal connection must be something more than consistent with the plaintiff's theory of how the claimed injury was caused. The burden is on plaintiff to show that it is more probable that the harm resulted from some negligence for which defendant was responsible than in consequence of something for which he was not responsible. Schendel v. C. M. & St. P. Ry. Co. 165 Minn. 223, 206 N. W. 436; Alling v. N. W. Bell Tel. Co. 156 Minn. 60, 194 N. W. 313; Robertson v. C. R. I. & P. Ry. Co. 177 Minn. 303, 225 N. W. 160; Phillips v. C. M. St. P. & P. R. Co. 182 Minn. 307, 234 N. W. 307; C. M. & St. P. Ry. Co. v. Coogan, 271 U. S. 472, 46 S. Ct. 564, 70 L. ed. 1041.

■ It is the right and duty of the trial court to direct a verdict for a party when it would be its duty to set aside a verdict against such party. A verdict should be directed where it clearly appears that it would be the duty of the court to set aside a contrary verdict. Abbett v. C. M. & St. P. Ry. Co. 30 Minn. 482, 16 N. W. 266; Trask v. Shotwell, 41 Minn. 66, 42 N. W. 699; Duluth Chamber of Commerce v. Knowlton, 42 Minn. 229, 44 N. W. 2; Sage v. Larson, 69 Minn. 122, 71 N. W. 923; Martin v. Courtney, 87 Minn. 197, 91 N. W. 487; Dorgeloh v. Mark, 183 Minn. 265, 236 N. W. 325.

The court should direct a verdict for defendant if upon all the evidence it would be the manifest duty of the court to set aside a verdict against him. Giermann v. St. P. M. & M. Ry. Co. 42 Minn. 5, 43 N. W. 483; Pennsylvania R. Co. v. Chamberlain, 288 U. S. 333, 53 S. Ct. 391, 77 L. ed. 819.

A verdict cannot be based on conjecture as to the existence of material facts. Thorkeldson v. Nicholson, 154 Minn. 106, 191 N. W. 269; Peterson v. Langsten, 186 Minn. 101, 242 N. W. 549; Carlson v. Equitable L. Assur. Society, 188 Minn. 43, 246 N. W. 370; McGerty v. Nortz, 191 Minn. 443, 445, 254 N. W. 601; Barich v. Pennsylvania F. Ins. Co. 191 Minn. 628, 255 N. W. 80; Gunning v. Cooley, 281 U. S. 90, 50 S. Ct. 231, 74 L. ed. 720.

■ No presumption of negligence arises from the fact that an operation or treatment by a surgeon or physician does not result in a cure. Staloch v. Holm, 100 Minn. 276, 283, 111 N. W. 264, 9 L.R.A.(N.S.) 712; Nelson v. Dahl, 174 Minn. 574, 219 N. W. 941; Johnson v. Arndt, 186 Minn. 253, 243 N. W. 67.

■ The doctrine of *res ipsa loquitur* does not apply in a case of the kind here presented. Staloch v. Holm, 100 Minn. 276, 111 N. W. 264, 9 L.R.A.(N.S.) 712; Nelson v. Dahl, 174 Minn. 574, 219 N. W. 941; Johnson v. Arndt, 186 Minn. 253, 243 N. W. 67. On the contrary, our decisions hold that in such a case the opinion evidence of medical experts is necessary. Berkholz v. Benepe, 153 Minn. 335, 190 N. W. 800; Thorkeldson v. Nicholson, 154 Minn. 106, 191 N. W. 269; Lorenz v. Lerche, 157 Minn. 437, 196 N. W. 564; Bush v. Cress, 181 Minn. 590, 233 N. W. 317. And see Ewing v. Goode (C. C.) 78 F. 442.

In such a case the question to be put to a qualified expert should not call for his opinion as to whether the treatment or thing done was proper or improper, but rather whether or not it was according to the customary and usual practice of the ordinarily skilled and careful surgical practitioners of the same school in the community. Lorenz v. Lerche, 157 Minn. 437, 196 N. W. 564; Scholte v. Brabec, 177 Minn. 13, 224 N. W. 259.

■ The burden of proving the failure of defendants to exercise the degree of skill, care, and diligence required by the rule of law

16

stated rested upon the plaintiff. The conclusion reached is that, on the evidence here presented, a verdict for the plaintiff could not stand, and the defendants were entitled to a directed verdict.

■ There remains for consideration the question of whether the court erred in a number of rulings on evidence. There are 22 of these rulings assigned separately as error, numbered 4 to 25, inclusive, in plaintiff's brief. We cannot undertake to discuss each separately. Eight of these assigned errors are discussed in plaintiff's brief, preceded by a general statement as to some of the reasons stated by the court for its rulings. The eight rulings argued in plaintiff's brief have been considered with some care. They are rulings on objections to questions asked Dr. Dakin and to rulings striking out answers given by him in a few instances. Some of the questions to which objection was sustained are substantially covered by testimony of this witness received without objection. The witness testified, without objection, in effect, that, assuming there was an excessive flow or escape of bile after the operation of January 6, 1933, he was of the opinion there was an opening at some place in the biliary passages or bile apparatus. The biliary passages are the cystic duct, the common duct, and the two hepatic ducts. Plaintiff's counsel then sought to have the witness specifically ascribe this flow of bile to an opening in the common bile duct. Objections to questions on that point were sustained. The witness had testified, without objection, that an opening caused by a probe being inserted through the wall of the common duct would result in an escape of bile for a time. He was not asked as to the amount that would so escape or as to how long it would be before nature would repair the puncture opening so made. It seems apparent that an expert, asked to base his opinion on the amount of bile escaping, here claimed to be a large amount, could go no further as to its source than to say that in his opinion there was an opening or leak at some place in the biliary passages or bile apparatus. The rulings complained of are found not to constitute reversible error.

Whether the court gave correct reasons for its rulings is not important.

The order appealed from is affirmed.